190 N.J. Super. 382 (1983)
463 A.2d 963
FREDERICK R. BURKE, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
JOHN J. DEINER, WARREN GLASER AND GEORGE BUONO, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS, AND ROSENTHAL AND ATTINGER, CERTIFIED PUBLIC ACCOUNTANTS, AND JAMES J. WINTERS, EDWARD REESE, HERBERT FENROW, ISADORE ATTINGER, INDIVIDUALLY AND AS EMPLOYEES OF ROSENTHAL AND ATTINGER, DEFENDANTS-RESPONDENTS ON CROSS-APPEAL.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 1983.
Decided July 11, 1983.
*386 Before Judges BOTTER, POLOW and BRODY.
Harold I. Braff argued the cause for appellants-cross-respondents (Braff, Litvak, Ertag, Wortmann & Harris, attorneys; Harold I. Braff of counsel and on the brief).
Joseph R. Bulman argued the cause for respondent-cross-appellant (Arthur W. Burgess, attorney; Joseph R. Bulman on the brief).
*387 Walton W. Kingsberry, III, argued the cause for defendants-respondents Rosenthal and Attinger (Richard A. Amdur, attorney; Richard A. Amdur on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
This action arises out of circumstances related to the wrongful discharge by the New Brunswick Parking Authority ("Authority") of plaintiff, its executive director. A separate action resulted in his reinstatement with full back pay. In this action he seeks damages from the three commissioners who voted for his removal (Deiner, Glaser and Buono) and from the accountants (Rosenthal and Attinger) whose special audit allegedly contributed to his discharge. The trial judge reduced plaintiff's several theories of recovery against the accountants to defamation. Concluding that plaintiff's evidence did not overcome their qualified privilege, he granted the accountants' motion for involuntary dismissal pursuant to R. 4:37-2(b). The judge submitted to the jury plaintiff's defamation claims against the commissioners. They returned a verdict in favor of plaintiff in the amount of $2,000 compensatory damages and punitive damages in different amounts against each commissioner: $2,000 as to Deiner, $5,000 as to Buono and $11,800 as to Glaser. The commissioners and plaintiff appeal. The commissioners claim an absolute privilege by reason of their office. Plaintiff contends that the judge applied the wrong standard to define how the accountants' privilege is lost.
Plaintiff replaced Deiner as executive director in 1971. He served without a contract until 1975, not long after a new mayor brought with him a change in the city administration. The employment contract was for a term of five years. It provided that plaintiff could not be discharged except for specified misconduct including "inefficiencies in the discharge of his duties" and "[m]isappropriation or misuse of property of the Authority." Because of the involuntary dismissal of plaintiff's claims against the accountants and the favorable verdict he received with *388 respect to his claims against the commissioners, we will recite the evidence in the light most favorable to his contentions.
The new mayor made it clear that he wanted plaintiff removed. He filled the first vacancy on the five-member Authority by appointing Deiner. The employment contract, however, protected plaintiff unless there was cause thereunder for discharge. In June 1976 plaintiff's young daughter, who worked for the Authority as a parking attendant, confessed to having stolen two locked bank bags containing her shift's receipts for two successive days. It was part of her job to carry the bags to the bank after banking hours and deposit them in a chute. Their loss was promptly noticed. At first she claimed to have deposited them at the bank but she later broke down and confessed to plaintiff, who then fired her. The bags were recovered from the trunk of her car.
The incident received considerable notoriety and enabled plaintiff's political foes to focus public attention on his stewardship of the Authority's operations. By letter dated July 28, 1976, the city director of finances engaged the accountants to conduct "a detailed audit of the receipts as handled by [plaintiff's daughter]...." The letter went on, "[T]he scope of the audit will be left to your professional judgment. We are interested in verifying that there are no other discrepancies in the receipts handled by Miss Burke and that our internal controls are sufficient to protect the assets of the Authority. We would, of course, welcome any recommendations you could make to improve our control."
The accountants were not strangers to the operations of the Authority. They had been the city's accountants for many years and in that capacity made annual audits for the Authority. Their special audit was submitted to the Authority August 10, 1976. In it they itemized ten specific "weaknesses and deficiencies in internal control" and made ten recommendations for *389 correcting them. Given plaintiff's position as executive director, there is an unmistakable implication that the alleged deficiencies reflected adversely on his office, business or employment, and are therefore defamatory as a matter of law. See Johnson v. Shields, 25 N.J.L. 116, 120 (Sup.Ct. 1855); Charles Parker Co. v. Silver City Crystal Co., 142 Conn. 605, 610-612, 116 A.2d 440, 443-444 (1955). "[W]here the publication is not reasonably susceptible of a non-defamatory signification it is libelous as a matter of law...." Herrmann v. Newark Morning Ledger Co., 48 N.J. Super. 420, 430 (App.Div. 1958). If given the opportunity, a reasonable jury could have found from plaintiff's evidence that some of the criticized practices and omissions alleged in the report were knowingly false or deliberately put in a false light. For example, the first item of "weaknesses and deficiencies" is the alleged failure to deposit cash receipts daily. Plaintiff and his expert testified that this statement is based largely on the fact that the bank did not record deposits made after banking hours until the following business day.
After publication of the special audit, the mayor publicly called for plaintiff to resign. On October 28, 1976 the mayor filled two additional vacancies on the Authority with defendants Glaser and Buono. At a meeting held later that same day, the commissioners removed plaintiff by a vote of three to two. The resolution charged him with "negligent operation of the Parking Authority, which borders on misappropriation or misuse of the property of the Authority and ... serious inefficiency in the discharge of his duties" for failing to follow the recommendations contained in the special audit. The resolution referred to "serious accounting and financial problems ... uncovered by the Accounting Firm of Rosenthal & Attinger...." The judge correctly found that the resolution directly or by innuendo imputed malfeasance on the part of a public official and was therefore defamatory as a matter of law. See Earl v. Winne, 14 N.J. 119, 125-126 (1953).
*390 The trial judge had to identify and apply three qualified privileges and immunities that protect the commissioners and accountants from liability even though their statements are legally defamatory.

A.
Plaintiff had or appeared to the public to have a substantial responsibility for the conduct of governmental affairs and was therefore a public official. Rosenblatt v. Baer, 383 U.S. 75, 85, 86 S.Ct. 669, 675, 15 L.Ed.2d 597 (1966) (appointed supervisor of a ski recreation area is a public official). The First and Fourteenth Amendments protect as free speech defamatory criticism of public officials. As a public official plaintiff cannot recover from the commissioners or the accountants for the harm caused by their defamatory statements relating to his official conduct unless he proves with convincing clarity that the statements were made with actual malice  that is, with knowledge that they were false or made with reckless disregard of the truth. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The judge carefully and correctly charged the jury as to this federal standard of proof and definition of malice.
For the first time the commissioners argue on appeal that the judge misled the jury by substituting "evil motive" for the federal definition of malice. An evil motive in the absence of at least a reckless disregard of the truth does not meet the federal definition of malice. Here the judge properly limited the "evil motive" standard to his instructions regarding punitive damages. Cf. Marchiano v. Sandman, 178 N.J. Super. 171, 175 (App.Div.), certif. den. 87 N.J. 392 (1981).
The judge was also correct in noting that plaintiff's evidence prima facie met the federal definition of malice as to the accountants' statements. Their familiarity with the Authority's *391 procedures over the years lends credence to the claim that their alleged distortions were made in deliberate or reckless disregard of the truth rather than through innocent misunderstanding of the operations of the garages and parking lots.

B.
The commissioners enjoy a distinct immunity under the Tort Claims Act for administrative action of a legislative or judicial nature. N.J.S.A. 59:3-2(b). Assuming that immunity applies here, it is subject to the exception contained in N.J.S.A. 59:3-14 for "willful misconduct." The common law immunity that preceded the act was also dependent on "good faith" conduct. Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc., 31 N.J. 124, 141 (1959); Visidor Corp. v. Cliffside Park, 48 N.J. 214, 221 (1966), cert. den. 386 U.S. 972, 87 S.Ct. 1166, 18 L.Ed.2d 132 (1967). We reject the commissioners' claim of absolute immunity.

C.
The third qualified privilege or immunity to be identified pertains to the accountants' audit. "A communication made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty...." Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 375 (1959). A qualifiedly privileged communication is less clearly defined than the other two privileges. The purpose of this privilege is to encourage free discourse, by reducing the risk of a defamation suit where public policy considerations especially favor the communication. The special audit is such a privileged communication. The accountants were engaged as experts to report the results of their investigation so that important managerial decisions could be made.
*392 This privilege, however, is lost when the communication is not made in good faith. The definition of good faith, and therefore the ease with which the privilege is lost, varies with the importance of the social and political interests being accommodated. Because those interests in Coleman were of a high order, the privilege there was held to be almost absolute. That defendant was a newspaper accurately reporting the statements of United States Senator Joseph R. McCarthy regarding developments in a duly authorized Senate subcommittee investigation. The court there applied the rule given in 3 Restatement, Torts 2d, § 611 at 297 (1977),[1] dealing with the report of the proceedings of a governmental body. According to the Restatement comment, the privilege is not lost "if the report is published solely for the purpose of informing the public." The privilege "differs from the usual conditional privilege in that it affords protection even though the defamatory statement reported is known to be false." Coleman, supra, 29 N.J. at 379. The trial judge erroneously applied this standard. He held that even though there was evidence that the accountants either knew that their defamatory statements were false or made them in reckless disregard of their truth or falsity, the privilege was not lost because there was no evidence that the accountants were principally motivated by ill will towards plaintiff.
Accountants making defamatory statements in an audit are not entitled to the high protection afforded a newspaper accurately reporting defamatory statements made by a government official concerning his public duties. But for the fact that they were investigating a public agency, and indirectly a public official, the accountants are more like a credit investigator *393 reporting false derogatory information. We have held that such a defamer is only protected by an "honest good faith belief in the truth of the report ... predicated on reasonable grounds, and in making that determination consideration will be given to whether the information reported has been obtained from reliable sources and the investigation and evaluation of such information were reasonable under the circumstances." Krumholz v. TRW, Inc., 142 N.J. Super. 80, 89 (App.Div. 1976).

D.
The status of plaintiff as a public official affords the accountants the benefit of two privileges. The protection for a qualifiedly privileged communication is lost if the statements are not made in "good faith" which Krumholz defines essentially as absence of negligence. However, the protection afforded the critic of a public official is not lost unless the statements are made with "malice," which Sullivan defines as made with knowledge that they are false or with reckless disregard of their truth or falsity. We need not decide the precise scope of the accountants' qualified privilege. It is enough to say that the protection afforded by the privilege rises no higher than the Sullivan standard of actual malice. Plaintiff must therefore be given the opportunity to meet the federal standard of proof and establish the federal definition of malice to overcome the privilege afforded the accountants as critics of a public official.
We have carefully considered the other points raised by the parties. The evidence in support of the verdict is sufficient and the legal issues raised are clearly without merit. R. 2:11-3(e)(1)(A) and (E).
Reversed as to the judgment entered in favor of defendants Rosenthal & Attinger and remanded for a new trial of plaintiff's defamation claim against them. In all other respects the judgment is affirmed.
NOTES
[1] 611. REPORT OF OFFICIAL PROCEEDING OR PUBLIC MEETING
The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.