260 N.J. Super. 92 (1992)
615 A.2d 288
FRANK J. ABELLA, INDIVIDUALLY AND INVESTMENT PARTNERS OF AMERICA, A LIMITED PARTNERSHIP OF NEW JERSEY, PLAINTIFFS
v.
BARRINGER RESOURCES, INC., A DELAWARE CORPORATION; PHILIP ENVIRONMENTAL, INC., A CANADIAN CORPORATION; BDO SEIDMAN, A PARTNERSHIP, ANTHONY BARRINGER, STANLEY S. BINDER, AUSTIN MARXE, AL BARBARA, FRANK J. PEARLMAN, ROBERT J. ARMSTRONG, DANIEL R. BERESKIN, JOHN J. HARTE AND JOHN DOES, ONE THROUGH TEN, INDIVIDUALLY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division General Equity Union County.
Decided June 26, 1992.
*95 Lawrence G. Goodman for plaintiff (Goodman and Fox, attorneys.)
Frederick J. Dennehy, for defendants (Wilentz, Goldman and Spitzer, attorneys.)
BOYLE, P.J.Ch.
This motion focuses on the novel issue of whether an independent auditor should be held liable for defamation for failing to redact from an audited report an allegedly defamatory statement written by the corporation.
Plaintiffs, Frank J. Abella ("Abella") and Investment Partners of America, instituted this action primarily against Barringer Resources, Inc. ("the Company") and several of its officers and directors. Plaintiffs' complaint principally alleges that said defendants wrongfully terminated Abella's employment with the Company. Plaintiffs' complaint also includes a defamation claim against the accounting firm BDO Seidman ("Seidman") and its partner, Frank J. Pearlman ("Pearlman"). These defendants have moved pursuant to R. 4:46 for summary judgment on the defamation count in plaintiffs' complaint. For the reasons set forth below, defendants' motion is granted and the defamation count in plaintiffs' complaint is dismissed.

I.
Pursuant to the Securities Exchange Act of 1934, the Company is required to file an audited annual report on Form 10-K *96 with the Securities and Exchange Commission ("SEC"). 15 U.S.C.A. § 78m; 17 C.F.R. s 249.30. Accordingly, the Company prepared its annual financial statement, which included the following footnote entitled "commitments and contingencies":
Effective July 18, 1990, Frank J. Abella, Jr., Managing Partner of Investment Partners of American ("IPA"), was terminated for cause by the Board of Directors of the Company as Vice Chairman and Chief Executive Officer of the Company. As a result, the management agreement between the Company and IPA was terminated. Mr. Abella and/or IPA may institute legal proceedings to recover the balance of the payments which would have been due under the agreement with IPA of approximately $180,000.00. The Company believes it has meritorious defenses to any claims against the Company made by Mr. Abella and/or IPA and intends to defend against any such claims and to assert counterclaims. [Emphasis added].
Thereafter, the Company hired defendants to audit its annual report. Seidman performed the audit, as described below, and attached its one page auditor's report to the Company's financial statement, which Barringer submitted to the SEC. Plaintiffs contend that they were defamed by the auditors because the auditors failed to redact the Company's written representation that Abella was "terminated for cause."
While these facts are simply stated, this motion is complex without an adequate understanding of the role and function of the independent auditor. Initially, it is important to note that the company prepares and is responsible for its financial report, not the auditor. The auditor's sole responsibility is to express an independent opinion on the fairness of the Company's report. AICPA Professional Standards Volume 1 ("AICPA"), Responsibilities and Functions of the Independent Auditor, AU § 110, at 61 (1992). In order to express an opinion on the fairness of the financial presentation, the auditor examines the report in accordance with Generally Accepted Auditing Standards ("GAAS"). Ibid. Under GAAS, an auditor must obtain reasonable assurance as to whether the financial statement taken as a whole is free of material misstatement. AICPA, Audit Risk and Materiality in Conducting an Audit, AU § 312, at 231-17 (1992). Some data upon which the auditor relies during this process is, as a practical matter, unverifiable. Rosenblum v. *97 Adler, 93 N.J. 324, 344, 461 A.2d 138 (1983) (citations omitted). The auditor is neither required to investigate every supporting document nor deemed to have the training or skills of a lawyer or criminal investigator. Ibid. Instead, in order to reasonably assure that the statement is not materially misstated, the auditor examines, on a test basis, samples of evidence that support the amounts and disclosures in the financial statement. AICPA, Audit Sampling, AU § 350, at 463 (1992). When this process is complete, the auditor opines whether the financial statement was prepared in accordance with generally accepted accounting principles and identifies those circumstances in which such principles were not consistently observed. AICPA, Responsibilities and Functions of the Independent Auditor, AU § 110, at 61. The auditor then memorializes this opinion in an "auditor's report," which is generally a one-page statement that is attached to the Company's financial statement. AICPA, Reports on Audited Financial Statements, AU § 508, at 651-54 (1992). At this point, the Company's annual report is deemed "audited" and the Company submits it on Form 10-K to the SEC.
The gravamen of this complaint concerns information disclosed in a footnote to the annual report. In order to conform to generally accepted accounting principles, the financial statement must, inter alia, adequately disclose material matters. AICPA, Adequacy of Disclosure in Financial Statements, AU § 431, at 521 (1992). If the Company refuses to disclose material information either in the body of the financial statement or its accompanying footnotes, the independent auditor is prohibited from expressing an unqualified opinion in her/his auditor's report. Ibid. For example, possible loss contingencies resulting from potential litigation must, in certain situations, be disclosed either as a charge against income or in a footnote. An estimated loss must be charged against income if:
a) information available prior to issuance of financial statements indicates that it is probable that an asset had been impaired or a liability had been incurred at the date of the financial statements; and

*98 b) the amount of loss can be reasonably estimated.
[AICPA, Exhibit 1  Excerpts from Statements of Accounting Standards No. 5: Accounting for Contingencies, AU § 337B, at 391-92 (1992)].
If the loss is not charged to income because one or both conditions are not met, the contingency shall be disclosed in a footnote if there is a reasonable possibility that a loss may be incurred. Id. at 392. Because the auditor does not possess the requisite legal skills and cannot make legal judgments, the auditor must rely on the client's counsel to corroborate any information concerning potential litigation. AICPA, Inquiry of a Client's Lawyer Concerning Litigation, Claims, and Assessments, AU § 337, at 381-83 (1992).

II.
To maintain a defamation suit, plaintiffs must prove the following elements:
(a) a false and defamatory statement concerning another;
(b) an unprivileged publication to a third party;
(c) fault amounting at least to negligence[1] on the part of the publisher; and
(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.
[Restatement (Second) of Torts § 558 (1977)]
The threshold inquiry of whether the statement in issue is susceptible of defamatory meaning is a question of law to be resolved by the court. Kotlikoff v. The Community News, 89 N.J. 62, 67, 444 A.2d 1086 (1982). In assessing the allegedly defamatory words, a court must evaluate the language "according to the fair and natural meaning which will be given it by reasonable persons of ordinary intelligence." Romaine v. Kallinger, 109 N.J. 282, 290, 537 A.2d 284 (1988).
Plaintiffs allege that the statement that Abella was "terminated for cause" is defamatory because "it falsely and wrongfully imputes that Abella was unfit for his employment as Vice Chairman of the Board of Directors and Chief Executive *99 Officer." Typically, the fair and natural import of the statement that a person was "terminated for cause" is only that the termination was not arbitrary. See Shebar v. Sanyo Business Systems Corp., 111 N.J. 276, 287, 544 A.2d 377 (1988). On its face, it appears to this court that the statement merely posits that Abella's termination was not arbitrary and that Abella refutes this position and may litigate the matter. The statement neither alleges that Abella was incompetent nor recites the particulars that led to his termination. However, this court is not prepared to hold that the phrase "termination by cause" is defined as a matter of law in all contexts as "a non-arbitrary cessation of employment." Thus, because a factual dispute as to its fair and natural meaning can conceivably exist, the phrase is not as a matter of law nondefamatory.
However, plaintiffs' assertion that defendants "published" the statement at issue is bereft of any merit. A defamatory statement is published when it is communicated, either intentionally or negligently, to one other than the person defamed. Restatement (Second) of Torts § 577(1) (1977). In order to impose liability for such publication, the statement must have been made by the defendant either directly or through some agency relationship. 50 Am.Jur.2d Libel and Slander § 163 (1970).
Independent auditors cannot be deemed to have published a footnote that was clearly written and "communicated" by the Company. According to the AICPA Professional Standards, the statement that Abella was terminated for cause was made by and is the responsibility of the Company, not Seidman or Pearlman. Similarly, the report to the SEC on Form 10-K specifically indicates to all its readers that it is the responsibility of the registrant  Barringer Resources, Inc. There is no question that this report was published by the Company, not Seidman or Pearlman.
However, plaintiffs contend that, based on the professional relationship between Seidman and the Company, the publication *100 requirement is nonetheless satisfied. This assertion is particularly devoid of any basis. Defendants are not officers or employees or general agents of the Company. They are auditors. No more, no less. Their professional responsibilities are outlined on page 19 of Form 10-K and in their professional standards, which require not that they formulate or endorse or communicate the Company's representations, but only that they opine that the Company's financial statement is free of material misstatement and is presented in conformity with generally accepted accounting principles.[2] Thus, defendants' audit was in no way tantamount to a publication on behalf of the Company much less the promulgation of their own statement with respect to the reason for the termination of Abella's duties.
Moreover, plaintiffs have not articulated a tenable theory as to the fault, i.e., the negligence[3] of the auditors with respect to the truth or falsity of the statement. According to the New Jersey Supreme Court, "[o]ne who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession in good standing in similar communities." Levine v. Wiss & Co., 97 N.J. 242, 246, 478 A.2d *101 397 (1984) (citations omitted). This court is convinced that defendants rendered their professional services in accordance with this standard.
As stated above, certain information contained in a financial statement is not, as a practical matter, verifiable by defendants. Moreover, defendants are not required to investigate every supporting document, nor are they deemed to have the skills of a lawyer or criminal investigator. It is beyond the scope of defendants' duties to make a legal determination as to the soundness of the Company's belief that sufficient cause existed to justify Abella's termination. While it is within the scope of defendants' duties to verify that the event in question in fact occurred or that a contingency in fact existed,[4] it is not within the scope of defendants' duties to act as the judge or jury to ascertain whether there truly was cause for the termination. Auditors are trained to perform certain tests to enable them to express an opinion on a company's financial condition. Auditors do not have any obligation and are indeed ill-equipped to conduct a hearing or render legal judgments. If this court were to hold otherwise, it would effectively render the accounting profession a defacto adjudicatory province and would instill a chilling effect upon the accounting profession to fulfill its heretofore standard duties.
Moreover, as stated above, defendants are required under the precepts of their own profession to ensure that the Company disclosed this potential contingency. The footnote merely apprised the readers of a contingency and attempted to allay any concomitant concerns, based on the Company's and its counsel's opinion that they could defend a potential lawsuit. Plainly, Pearlman had neither the duty nor the authorization to dissuade the Company from disclosing this contingency. Thus, *102 defendants cannot be castigated for failing to verify what was not verifiable or declining to redact what was not redactable.
Furthermore, even if plaintiffs were able to present a prima facie case of defamation, defendants would nonetheless be deemed privileged. In Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 375, 149 A.2d 193 (1959), the New Jersey Supreme Court opined that:
[a] communication made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without the privilege, would be slanderous and actionable.
This qualified or conditional privilege is based on the public policy "that it is essential that true information be given whenever it is reasonably necessary for the protection of one's own interests, the interests of third persons, or certain interests of the public." Restatement (Second) of Torts § 592A, introductory note, at 258 (1977).
At least two state courts have held that, when sued for defamation, auditors are qualifiedly privileged.[5]Williams v. Hobbs, 81 S.D. 79, 131 N.W.2d 85, 87 (1964); Ross v. Gallant, Farrow & Co., P.C., 27 Ariz. App. 89, 91, 551 P.2d 79, 81 (1976). See also Burke v. Deiner, 190 N.J. Super. 382, 463 A.2d 963 (App.Div.), rev'd on other grounds, 97 N.J. 465, 479 A.2d 393 (1983) (accountants engaged as experts to investigate a parking authority's internal financial controls were conditionally privileged). New Jersey courts have also recognized the utility of the qualified privilege in a variety of settings. See, e.g., Fees v. Trow, 105 N.J. 330, 521 A.2d 824 (1987) (an employee of a state facility for the disabled conditionally privileged in making report of another employee's abuse of resident); Holh v. Mettler, 62 N.J. Super. 62, 162 A.2d 128 (App.Div. 1960) (property owners conditionally privileged in commenting about potential health *103 problems resulting from proposed trailer park); Swede v. Passaic Daily News, 30 N.J. 320, 153 A.2d 36 (1959) (newspapers conditionally privileged to report on public proceedings).
Generally, a qualified privilege exists when the legitimate public or private interest underlying the publication outweighs the interests of the individual. See Dairy Stores v. Sentinel Publishing Co., 104 N.J. 125, 137, 516 A.2d 220 (1986). In the instant matter, it is axiomatic that this report served legitimate public and private interests. The alleged defamatory statement is contained in the Company's 1990 report to the SEC on Form 10-K, the filing of which is mandated by 15 U.S.C. § 78m and 17 C.F.R. § 249.30. The SEC's reporting requirement is designed to provide investors with the information necessary to make informed decisions, and provides the SEC with a basis to police the actions of companies subject to the requirement. See, e.g., SEC v. IMC Int'l, Inc., 384 F. Supp. 889, 893-94 (N.D.Tex.), aff'd 505 F.2d 733 (5th Cir.1974), cert. denied, 420 U.S. 930, 95 S.Ct. 1131, 43 L.Ed.2d 402 (1975). Plainly, both the Company and the public have a considerable interest in the circumstances surrounding the termination of Abella's contract and the attendant financial consequences to the Company.
To forfeit this conditional privilege, the propounder of the statement must know that the statement is false or recklessly disregard its truth or falsity. This must be shown by clear and convincing evidence. Erickson v. Marsh McLennan Co., 117 N.J. 539, 566-67, 569 A.2d 793 (1990). Herein, plaintiffs have not presented a prima facie case of malice. Indeed, plaintiffs have not alleged or provided any evidence that defendants knew of or recklessly disregarded the statement's falsity. Defendants simply relied upon the representations of the Company's management and its counsel as well as upon the principles of their profession. Thus, even if Seidman and Pearlman had negligently published the statement, and even if it were deemed to be defamatory, the statement would nonetheless be *104 protected by a qualified privilege, which was not, and indeed is not alleged to have been, forfeited by Seidman or Pearlman.
While there may or may not be a factual dispute in this case concerning the circumstances surrounding Abella's termination, the dispute exists, if at all, between plaintiffs and the Company, and its resolution has no impact on the liability of Seidman or Pearlman. Thus, because plaintiffs have neither raised a genuine issue of material fact as to whether defendants' negligently published the allegedly defamatory statement nor presented any evidence to rebut defendants' qualified privilege, summary judgment is hereby granted and plaintiffs' defamation complaint is hereby dismissed.
NOTES
[1] See infra note 3.
[2] Clearly, independent auditors are potentially liable for failing to detect a material misstatement in financial condition. See, e.g., Rosenblum, supra, 93 N.J. at 324, 461 A.2d 138. However, plaintiffs have not herein made such an allegation.
[3] According to Sisler v. Gannett Co., Inc., 104 N.J. 256, 279, 516 A.2d 1083 (1986), Abella, as a private individual, must prove actual malice if he is deemed to have conducted his affairs in a manner that one in his position would reasonably expect to implicate a legitimate public interest with an attendant risk of publicity. Barringer is a publicly traded corporation with over six million shares of stock outstanding. Form 10-K is submitted to the SEC for the benefit of all current and potential investors and the public at large. As Vice Chairman and Chief Executive Officer of this public corporation, Abella can arguably be required to prove actual malice as in Sisler. However, because plaintiffs have not proven the lesser standard of negligence, as set forth in this opinion, and have not furnished any evidence of malicious intent, the court will not address the issue of malice.
[4] In confirming management's footnote disclosure, Pearlman relied on, inter alia, a letter from defendants' law firm and a confirmation letter written by management.
[5] Although both courts recognized that the accountants/auditors were conditionally privileged, neither addressed whether they could be liable for defamation in the first place.