**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1312-21

YECHESKEL "CHARLIE"
SCHWAB and DATAMAP
INTELLIGENCE, LLC,

      Plaintiffs-Appellants,

v.

JOYCE BLAY,

      Defendant,

and

HERSHEL HERSKOWITZ,
a/k/a HAROLD HERSKOWITZ,
SHLOMIE KLEIN, a/k/a SHLOMO
KLEIN, and ABRAHAM SHARABY,

      Defendants-Respondents.

_____

         Argued December 12, 2023 – Decided December 18, 2023

         Before Judges Haas and Puglisi.

         On appeal from the Superior Court of New Jersey, Law
         Division, Ocean County, Docket No. L-2695-18.

Willard C. Shih argued the cause for appellants (Wilentz, Goldman & Spitzer, PA, attorneys; Willard C. Shih, of counsel and on the briefs; Pierre Chwang, on the briefs).

Todd C. Landis argued the cause for respondent Harold Herskowitz (Hardin Kundla McKeon & Poletto, PC, attorneys; Todd C. Landis, on the brief).

Joseph Slaughter (Ballard Spahr, LLP) of the New York and District of Columbia bars, admitted pro hac vice, argued the cause for respondent Shlomie Klein (Ballard Spahr, LLP, attorneys; William Patrick Reiley, Seth D. Berlin, of the New York, District of Columbia, and Maryland bars, admitted pro hac vice, and Joseph Slaughter, on the brief).

Pashman Stein Walder Hayden, attorneys for amicus curiae The Reporters Committee for Freedom of the Press & 10 Media Organizations (CJ Griffin, on the brief).

Abraham Sharaby, respondent, argued the cause pro se.

PER CURIAM

Yecheskel "Charlie" Schwab (plaintiff) was the owner of a business known as Datamap Intelligence, LLC (DMI) (collectively plaintiffs) located in the Township of Lakewood (the township). Defendants Shlomie Klein and Abraham Sharaby were journalists who contributed to blogs[1] that discussed

---

[1] A "blog" is "'a type of personal column posted on the Internet. . . . Some blogs are like an individual's diary while others have a focused topic, such as recipes

A-1312-21

issues in the township. Defendant Harold Herskowitz had a Twitter account and commented on matters of concern to the township.

Beginning in 2018, articles appeared on two websites containing derogatory statements and inferences stating plaintiff participated in corrupt business dealings along with a township committeeman. Plaintiff believed Klein and Sharaby were associated with the websites. Herskowitz retweeted the articles on his Twitter account, and provided additional negative commentary about plaintiff.

Plaintiffs filed a complaint against Klein, Sharaby, and Herskowitz for defamation and other torts. The trial court subsequently granted summary judgment in favor of all three defendants and dismissed plaintiffs' complaint. On appeal, plaintiffs argue the court erred in granting summary judgment. Having considered plaintiffs' arguments in light of the record and the applicable law, we affirm.

I.

We begin by reciting the essential facts concerning plaintiffs' claims, and view those facts in the light most favorable to plaintiffs, the non-moving parties.

---

or political news.'" <u>Too Much Media, LLC v. Hale</u>, 206 N.J. 209, 219 n.1 (2011) (quoting Douglas Downing, Dictionary of Computer and Internet Terms 58-59 (10th ed. 2009)).

Polzo v. Cty. of Essex, 209 N.J. 51, 56 n.1 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)). Plaintiff was the founder and sole owner of DMI, a company that provided detailed mapping and demographic information primarily in the township. He also had real estate investments. Plaintiff was aware of rumors in the township that he was accused of corruption.

Beginning in August 2018, a number of articles negatively referencing plaintiff appeared on a website known as jleaks.com (jleaks). For example, on August 14, 2018, an article (the Greed article) was published on jleaks entitled "Schwab, Miller and Greeee$$$eeed" with a subtitle of "why is the Lakewood Township Committee giving away very valuable commercially-zoned land to Charlie 'Chatz' Schwab for bupkes?? Is America's most prolific land-swapper residing right here in our own little town!? This just proves the age-old adage that it's 'who you know' that counts . . ." The Greed article included the following statements:

> Mr. Schwab is the silent partner of Lakewood Committeeman Menashe Miller. Mr. Miller arranges a free land swap for himself while giving the town a dinky lot in exchange for prime real estate.
>
>  . . . .
>
> The way Schwab and Miller operate is simple . . . Schwab goes ahead and purchases a scrap of land next to township land, Miller gets the township to sell the

4

township land in a private sale, Township committee sells it for the assessed? value to Schwab, Schwab sells the land for full price and splits the profits with Miller.

. . . .

as soon as he [Schwab] gets control of one of the parcels he can go ahead and conduct a private sale via his friends on the committee for the adjacent parcels

. . . .

Therefore, everyone make good money, Schwab & Miller and also the individual who behind the scenes control CHEMED

. . . .

This is the not first time Schwab & Miller is getting free land from the township so he can split the spoils with Committeeman Menashe Miller

. . . .

In most of his swaps he used Starmark appraisals to appraise the land and come up with fake numbers.

On August 22, 2018, an article was published on jleaks entitled, "Fifty Shades of Schwab." It contained the following statements:

Schwab & Menashe Miller own Datamap, Diamond Triumph Properties, LLC, Pinerock Lakewood LLC, Richatz LLC, North Lake Realty LLC, Land Baron LLC, DataMap Intelligence, DIAMOND TRIUMPH PROPERTIES LLC, PINEROCK CAPITAL LLC, PINEROCK LAKEWOOD LLC, CLIFTON ROCK LLC, NORTH LAKE REALTY LLC, LAND BARON

5

LLC, LIPPENCOTT CAPITAL LLC, ANDY17 LLC, JANICEROCK LLC, RACK HOLDINGS LLC, LENNYROCK LLC, RIDGE ROCK HOLDINGS LLC, aka CHALDT ENTERPRISES LLC.

. . . .

Most the time Schwab & Miller apply for a land acquisition or swap for an LLC that does not exist! Was never registered. Once the acquisition or swap is approved they go ahead and register.

. . . .

Another great source of income for Schwab & Miller is the mapping services Schwab & Miller provide for the township under the name of DataMap Intelligence. Miller has voted repeatedly to grant the mapping business to Schwab & Miller even though he gets 50% of the profits.

On December 11, 2018, an article was published on jleaks entitled "Shady Schwab – caught with his pants down."  It included an offensive picture of plaintiff with his pants down holding what appeared to be a sexual device.

On December 23, 2018, an article was published entitled "Shady Schwab cannot help himself – Lakewood Township dances to the fiddle of Shady Schwab."

 Meanwhile, on another website, hefkervelt.blogspot.com (hefkervelt) an article was published on August 14, 2018, entitled "Claim: a Land Swap Deal that will cost Lakewood taxpayers while a committeeman can profit off it."

6

Herskowitz stated he had heard rumors around town about land swap deals involving plaintiff. He retweeted the hefkervelt article and added the following commentary:

> I am going to make this short and sweet. I can go on and list all of the corruption that Menashe and Meir have done together and separately along with . . . builders and developers.
>
> This deal is nothing compared to the scam that Menashe perpetrated with Schwab by secretly bringing Mr. Garzo to claim hundreds of undersized lots and suing the township. In reality Mr. Garzo was suing the taxpayers. And the entire case was orchestrated by Menashe Miller and his friend.
>
> But how many lots and properties were sold, divided, switched and donated, all for personal gain since Menashe [a]nd meir [h]ave been in charge?

Herskowitz used his Twitter account to further direct his audience to consider the jleaks articles pertaining to plaintiff, and made the following comments:

> Dinky piece of undersized property: $100 Prime real estate in commercial zone: million$ Having a friend (silent partner) on the committee to approve a landswap: pricele$$ This is what the swamp looks like! Schwab, Miller and Greeee$$$eeed."
>
> . . . .
>
> How does @LakewoodTwpNJ allow this? . . .

7

A-1312-21

> [T]his is just a small example of the corruption that is killing our town. This has to stop.

The articles on jleaks were attributed to "Moshe (or Moishe) Kapoyer." However, that name was a pseudonym. Sharaby was a journalist. At his deposition, he stated he could have used a pseudonym of "Moshe" but did not recall whether he used the Moshe Kapoyer pseudonym.

Sharaby conceded that he communicated with a woman known as Julie Globus who was seeking permission regarding republishing a jleaks article. However, Sharaby stated he could not give her permission because he was not the publisher of jleaks. Globus never inquired of Sharaby as to the identity of the publisher of jleaks and had no knowledge about this.

On November 25, 2018, a rabbinical court issued a "siruv," excommunicating plaintiff because he litigated the defamation matter in a secular court instead of a rabbinical court, a violation of Jewish law. Klein and Herskowitz both publicized the siruv in the township, and this was in keeping with the laws of the rabbinical court.

On January 24, 2018, Sharaby submitted a request under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, seeking all emails from committeemen that included the terms "land exchange" and "land swap" from July 30 through December 31, 2017.

A-1312-21

Klein was the publisher of a blog and YouTube channel entitled First Amendment Activist. At his deposition, he refused to answer most questions, asserting journalistic privilege.

Nevertheless, plaintiff gathered circumstantial evidence that he believed connected Klein to jleaks. The evidence included: a photograph plaintiff alleged Klein took of plaintiff that was published on jleaks; documents Sharaby obtained from an OPRA request that included post-it notes from the township that were published on jleaks and Sharaby stating he had given the documents to Klein; a jleaks article that contained documents Klein retrieved from the township in response to an OPRA request made under a fictitious name, Sam Vannell, a name that Sharaby did not deny using; and an article published on jleaks containing confidential information about a divorce proceeding (the "Aber divorce") that plaintiffs alleged only Klein had access to and the motivation to disseminate.

At his deposition, Klein stated he had no access to the "back end" of jleaks. He acknowledged that he might have taken a photograph of plaintiff but did not know if that was the photograph that appeared on jleaks.

Herskowitz conceded he wanted certain individuals voted off the township committee. However, he did not personally know Schwab. Herskowitz claimed

9

he discussed with Eliot Zaks information pertaining to plaintiff, but Zaks denied it. Herskowitz stated he made only one comment about plaintiff on hefkervelt, although the complaint cited multiple comments Herskowitz made.

Klein did not produce any electronic devices he owned at the time the articles were published, stating they changed often, contained private information, and were privileged. Sharaby changed his cell phone after the start of the litigation even though he was instructed to preserve his electronic devices. Herskowitz did not search his email account for communications and no longer had his phone from when the litigation began.

Plaintiff alleged he suffered damages, including reputational harm and disrupted relationships. Plaintiff calculated his measurable damages to be $1,416,254. This was based upon the township determining not to hire DMI for: a $50,000 census job; a digital tax map quality control project worth approximately $100,000; the "No Net Loss Reforestation Act Planting" Plan worth $277,254; and the township zoning map worth $50,000. In addition, plaintiff asserted that township representatives had discussed purchasing certain real estate from plaintiff, but this never occurred. Plaintiff believed that these business losses were a result of the negative articles and tweets about him.

A-1312-21

On November 6, 2018, plaintiffs filed a complaint, later amended, against Klein, Sharaby, and Herskowitz, alleging defamation, portraying him in a false light, conspiracy, and aiding and abetting.[2] On March 3, 2020, the trial court issued a case management order instructing plaintiffs to serve all defendants with expert reports to establish and quantify the damages they claimed. Plaintiffs did not comply with the order.

On November 2, 2020, Klein filed a certification in connection with his request for a protective order that stated as follows:

> I am not the publisher of the "jleaks" or "hefkervelt" websites identified in the amended complaint in this action, and had no involvement in publishing any of the articles identified in the amended complaint. In addition, I did not provide to "jleaks" "hefkervelt " or any other third party any information contained in any of the articles identified in the amended complaint.

After the completion of discovery, Klein and Herskowitz each filed motions for summary judgment, and the trial court granted these motions on October 5, 2021. Two weeks later, Sharaby filed a motion for summary judgment and, on November 9, 2021, plaintiffs requested leave to file a second amended complaint. On November 22, 2021, the court granted Sharaby's motion

---

[2] Plaintiffs also sued a fourth defendant, Joyce Blay, but the claims against her were dismissed after she retracted the article she published.

A-1312-21

for summary judgment and denied plaintiffs' motion to amend the complaint. This appeal followed.

## II.

In Point I of their brief, plaintiffs argue that the trial court erred by granting summary judgment in favor of Klein. We disagree.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court, namely, the standard set forth in Rule 4:46-2(c). Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, we consider, as Judge Coleman did, whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill, 142 N.J. at 540). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007). We accord no deference to the trial judge's conclusions on issues of law and review issues of law de novo. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

When it comes to defamation, New Jersey courts give "greater protection to speech involving . . . the public interest because of the important role that

uninhibited and robust debate plays in our democratic society."  Senna v. Florimont, 196 N.J. 469, 474 (2008).  To establish defamation when the public interest is at stake, "the plaintiff must prove actual malice, showing that the speaker made a false and defamatory statement either knowing it was false or in reckless disregard of the truth."  Ibid.

In New York Times Co. v. Sullivan, 376 U.S. 254, 279 (1964), the United States Supreme Court ruled that to establish a defamation claim against a public figure, the public figure "must prove with convincing clarity that the defamatory statements were published by the defendant with knowledge of their falsity or reckless disregard of whether they were true or false."  Lawrence v. Bauer Pub. & Printing Ltd., 89 N.J. 451, 466-67 (1982) (citing New York Times, 376 U.S. at 279).  In Saint Amant v. Thompson, 390 U.S. 727, 731 (1968), the Court instructed that, to prove recklessness, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.  Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice."

The actual malice standard is subjective and involves an inquiry into the defendant's state of mind.  Costello v. Ocean Cnty. Observer, 136 N.J. 594, 615 (1994) (citing St. Amant, 390 U.S. at 731).  "To find actual malice, the factfinder

A-1312-21

must determine that the defendant in fact entertained serious doubts about the truth of the statement or that defendant had a subjective awareness of the story's probable falsity." Ibid.

In granting Klein's motion for summary judgment, the trial court applied the stricter actual malice defamation standard because defendants' alleged defamatory statements implicated matters of legitimate public concern regarding corrupt business dealings between the township and plaintiff. Thus, according to the court, all elements of the defamation claim had to be proved by clear and convincing evidence.

The court found that plaintiffs failed to submit clear and convincing evidence that Klein was the publisher of the articles or the websites. In addition, the court ruled plaintiffs did not establish their claim for damages because they did not produce an expert report or affidavits quantifying damages, despite the court's order to do so. In addition, plaintiffs did not submit affidavits from "any members of the Lakewood Township community or municipal government to establish a claim for compensatory and actual damages." The court dismissed plaintiffs' remaining tort claims for conspiracy, aiding and abetting, and false light, because they were all premised on the underlying defamation action.

In Point I.A., plaintiffs argue that the trial court erred by applying a heightened standard of review to all the elements of the defamation claim,[3] when in fact, plaintiffs were only required to prove one element of the claim, i.e., actual malice, by clear and convincing evidence. Thus, plaintiffs contend they only needed to demonstrate that Klein was the publisher of the articles by a preponderance of the evidence.

However, it is well established in New Jersey that a plaintiff's "burden of proof for each of the elements of defamation is by clear and convincing evidence." Hornberger v. Am. Broad. Cos., Inc., 251 N.J. Super. 577, 598 (App. Div. 2002); See also Model Civil Jury Charge 3.11A (PUBLIC DEFAMATION) (Approved 03/2010; Revised 11/2022) ("[Plaintiff] must prove five elements by clear and convincing evidence"). Therefore, we reject plaintiffs' contention on this point.

Plaintiffs argue in Point I.B. that the circumstantial evidence they submitted in opposition to Klein's motion was sufficient to demonstrate a

---

[3] To recover on a defamation claim in a case where the actual malice standard applies, a plaintiff must prove (1) they suffered damages from (2) the defendant making false and defamatory factual statements about the plaintiff (3) to third parties in a non-privileged situation, (4) with actual knowledge that the statement was false or with a reckless disregard or whether it was true or false. See Newman v. Delahunty, 293 N.J. Super. 491, 498-99 (Law Div. 1994).

15

material issue of fact as to whether Klein was the person responsible for publishing the articles on the websites.  This argument also lacks merit.

"A defamatory statement is published when it is communicated, either intentionally or negligently, to one other than the person defamed." Abella v. Barringer Res., Inc., 260 N.J. Super. 92, 99 (Ch. Div. 1992) (citing Restatement (Second) of Torts § 577(1) (1977)).  "Under the New Jersey law of defamation, publication is 'a word of art and refers to the distribution of written material or the transmittal of the spoken word to a third person.'"  50 N.J. Practice, Business Law Deskbook § 19:3 (Elga A. Goodman et al.) (2022-2023 ed.).

> To be liable for defamation, defendant . . . must have published or knowingly participated in publishing the defamation. . . . . Hence, his liability, if any, depends upon whether his participation in the story was significant enough, and was rendered with sufficient knowledge, to make him liable for the . . . defendants' defamation.
>
> [Tavoulareas v. Piro, 759 F.2d 90, 136 (D.C. Cir. 1985) (emphasis in original)].

After reviewing the record in a light most favorable to plaintiffs, we conclude that plaintiffs failed to satisfy their burden of proving that Klein published or authored the alleged defamatory statements.  Plaintiffs' evidence that purportedly linked Klein to the websites consisted of:  a photograph plaintiff alleged was taken by Klein and published on jleaks; documents from OPRA

16                                                      A-1312-21

requests that were ultimately published on jleaks; and publication of confidential materials regarding the Aber divorce that plaintiffs believed could only have been provided by Klein.

However, even if a photograph that Klein took appeared on the website, and even if the website reported favorably about his representation of Aber in the divorce proceedings, this does not establish that Klein authored or published the defamatory articles. Moreover, Klein provided a sworn statement that he did not author or publish the articles, and plaintiffs did not provide any evidence to the contrary.

In addition, plaintiffs made no attempt to serve a subpoena on the domain registrars or hosts of the websites, notwithstanding the instructions in Dendrite International, Inc. v. Doe No. 3, 342 N.J. Super. 134, 141-42 (App. Div. 2001), setting forth the procedures for subpoenaing information as to the identity of anonymous users of internet message boards. Moreover, Klein correctly points out that plaintiffs never attempted to depose municipal employees or other individuals, such as the Aber divorcee, who might have been able to corroborate allegations pertaining to Klein's activity on jleaks. Under these circumstances, we agree with the trial court that plaintiffs did not establish by clear and convincing evidence that Klein published any of the alleged defamatory articles.

17

Next, in Point I.C., plaintiffs argue that the trial court erred by considering Klein's November 2, 2020 statement that he was not the publisher of either of the websites. They claim that this statement contradicted Klein's deposition testimony because, at deposition, Klein invoked the privilege afforded to reporters under the New Jersey Shield Law, N.J.S.A. 2A:84A–21, to decline to answer a number of the questions posed.

Plaintiff's argument on this point lacks merit because Klein stated at his deposition that he did not have access to the "back end" of jleaks and did not publish or author the articles. Thus, his testimony was consistent with his November 2, 2020 written statement.

Finally, in Point I.D., plaintiffs argue that they were not required to submit expert reports in order to establish the damages they claimed. However, this argument ignores the fact that the trial court specifically ordered plaintiffs to provide such reports in the March 3, 2020 case management order. Plaintiffs were therefore required to comply with this directive. Gonzalez v. Safe & Sound Sec. Corp., 185 N.J. 100, 115 (2005).

Thus, even though in some cases it might not have been necessary to submit an expert report to establish damages, plaintiffs defied a court order. Although plaintiffs alleged that they would have been able to establish their

18

damages at trial by calling various members of the Lakewood Township community as witnesses, they presented no affidavits from any of these potential witnesses in opposition to defendants' motions for summary judgment. Therefore, we conclude that the trial court did not err by granting summary judgment to Klein and dismissing plaintiffs' complaint.

III.

In Point III, plaintiffs argue that "the trial court erred by granting summary judgment in favor of Sharaby without engaging in any analysis of the facts or law."  Again, we disagree.

As stated in its November 22, 2021 written decision, the trial court granted summary judgment to Sharaby for the same reasons it granted it to Klein, finding that plaintiffs had not established the elements of defamation by clear and convincing evidence.  The court found that plaintiffs did not provide clear and convincing evidence linking Sharaby to jleaks or that he had acted with actual malice.  The court also found that plaintiffs did not establish damages against Sharaby.

In making these rulings, the court referred back to its October 5, 2021 written decision dismissing plaintiffs' complaint against Klein and Herskowitz. However, plaintiffs allege that they presented different evidence concerning

19

Sharaby and his alleged relationship to jleaks, together with evidence that Sharaby targeted plaintiff in various ways over the years.

After reviewing this evidence in the light most favorable to plaintiffs, we conclude that, like the meager evidence plaintiffs submitted regarding Klein, it failed to demonstrate that Sharaby published the articles on the websites. The evidence that plaintiffs allege tied Sharaby to jleaks was the email from Globus, seeking permission to republish a jleaks article. However, Globus stated she never asked Sharaby to identify the publisher of jleaks and she had no knowledge of that information. Sharaby stated he was not the publisher of jleaks and, as noted, plaintiffs never subpoenaed information about the publisher of that website.

Plaintiffs also characterized the evidence that Sharaby targeted him over the years as Sharaby "disseminat[ing] false information about his religious practices." However, the citations to the record that plaintiffs provide all involve the rabbinical court proceeding where the court chastised plaintiff for suing for defamation in a civil court, instead of in a rabbinical court. This incident occurred in November 2018, after plaintiffs had already filed their complaint. Thus, plaintiffs did not establish that Sharaby had targeted him.

As was the case with Klein, plaintiffs also failed to demonstrate that they suffered any damages for anything Sharaby may have done. We are therefore satisfied that the trial court properly granted Sharaby's motion for summary judgment and dismissed plaintiffs' complaint against him.

IV.

We now turn to plaintiffs' claims against Herskowitz. Unlike Klein and Sharaby, there was clear and convincing evidence that Herskowitz published the statements that were the subject of plaintiffs' complaint against him. However, the trial court found that Herskowitz's comment on his Twitter account that plaintiff perpetrated a scam to benefit himself at the expense of taxpayers was opinion and, therefore, not actionable.

In addition, the court noted that Herskowitz believed his comment was true and only named plaintiff once in a post. Therefore, the court found that plaintiffs failed to establish actual malice. As was the case with Klein and Sharaby, the court also found that plaintiffs did not establish their claim for damages against Herskowitz.

In Point II of their brief, plaintiffs argue that Herskowitz's remarks should not have been considered protected opinion and that they produced sufficient evidence to demonstrate that Herskowitz made his posts with actual malice.

21

Plaintiffs also complain that the trial court did not analyze all of Herskowitz's statements to determine whether they were fact or opinion and, instead, focused almost entirely on the one in which he specifically referred to plaintiff by name.

Exercising our de novo review, we have reviewed all of the statements Herskowitz made on social media that plaintiffs allege were defamatory. Having done so, we are satisfied that it is not necessary to determine which may be characterized as fact and which may be characterized as opinion. This is so because, as the trial court found, plaintiffs failed to demonstrate that Herskowitz made any of the remarks with actual malice.

"[T]he actual malice hurdle is a high bar that public-figure plaintiffs rarely surmount." Zimmerman v. Al Jazeera America, LLC, 246 F. Supp. 3d 257, 280 (D.D.C. 2017). Nevertheless, it is possible for a plaintiff to introduce evidence that defendants "entertained serious doubts as to the truth" of the material they published. Ibid. In Zimmerman, for example, a recantation occurred prior to the publication of the materials. Ibid. In any case, a plaintiff must show that the "defendant in fact harbored subjective doubt." Id. at 281.

Moreover, a "failure to investigate will not alone support" recklessness. Ibid. As to demonstrating there was actual malice by circumstantial evidence, the United States Supreme Court has identified three examples where that may

occur: (1) where there is evidence that the defendant "fabricated" the story; (2) where the evidence suggests the allegedly defamatory statements are "so inherently improbable that only a reckless man would have put them in circulation[;]" or (3) where the evidence demonstrates that "there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." Saint Amant v. Thompson, 390 U.S. 727, 731-32 (1968).

Applying these standards, we conclude that plaintiffs did not establish actual malice. Herskowitz testified he believed his statements were true because he heard rumors in the township that plaintiff was involved in corrupt real estate deals. Plaintiffs did not introduce any evidence that would have led Herskowitz to question whether the information he had was accurate. Indeed, plaintiff, himself, was aware of these rumors.

Finally, as was the case with Klein and Sharaby, plaintiffs also failed to provide competent evidence relating to their claimed damages against Herskowitz. This provided an alternate basis for the trial court to dismiss plaintiffs' claims against him.

A-1312-21

V.

The arguments plaintiffs raise in Points IV, V, and VI of their brief lack sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E). We add the following brief comments.

Plaintiffs argue in Point IV that they could not procure the necessary evidence to establish their claims because defendants spoliated evidence by changing their cell phone numbers and not preserving electronic communications after the litigation commenced. However, Klein and Sharaby were protected by the Shield Law because they were both involved with the news media. In addition, plaintiffs had other means to obtain proof as to the identity of the publisher of jleaks. However, they did not even subpoena the website owner. Thus, plaintiffs did not prove that any of defendants' actions disrupted their case. Johnson v. Benjamin Moore & Co., 347 N.J. Super. 71, 83 (App. Div. 2002) (stating that the test for spoliation is whether the spoliated evidence disrupted the plaintiff's case).

In Point V, plaintiffs argue that the trial court should have granted their motion to amend their complaint after it granted Klein's and Sharaby's motions for summary judgment and while it was considering the similar motion filed by Herskowitz. This argument lacks merit.

The determination "of a motion to amend a pleading is generally left to the sound discretion of the trial court . . . and its exercise of discretion will not be disturbed on appeal, unless it constitutes a 'clear abuse of discretion.'" Franklin Med. Assocs. v. Newark Pub. Sch., 362 N.J. Super. 494, 506 (App. Div. 2003) (quoting Salitan v. Magnus, 28 N.J. 20, 26 (1958)). As the trial court pointed out in denying the late motion, plaintiffs "had three years to perfect [their] proofs." The parties completed discovery on September 1, 2020, and plaintiffs did not file their motion until November 9, 2021, after two of the three defendants had already been granted summary judgment. Under these circumstances, we discern no abuse of discretion by the trial court's denial of the motion.

Finally, plaintiffs argue in Point VI that their "conspiracy, aiding and abetting, and false light claims should have survived summary judgment given the [trial] court's error in dismissing plaintiffs' defamation claims." However, we have concluded that the court did not err in dismissing the defamation count of the complaint, which was the basis for all of plaintiffs' remaining claims. Therefore, we reject plaintiffs' contention on this point.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1312-21