291 N.J. Super. 382 (1996)
677 A.2d 771
VINNIE M. FEGGANS, PLAINTIFF-RESPONDENT,
v.
ALLEN BILLINGTON, MAXWELL BRICKS, KIMBERLY BURD, ROBERT BURD, NICHOLAS CARDELLA, JUDITH CHORBA, ARTHUR H. COUGHLIN, JOSEPH DECKER, LEE ESPOSITO, KARL FLESCH, CYNTHIA FORERO, PAUL FORT, JANICE HARGRAVES, DEBRA JOHNSON, THEODORE JONES, LISA KEEGAN, THOMAS KENNEDY, VINCENT MAFFEI, MATTHEW D. MAHADY, ELLEN MCCOURT, KEVIN MCSHERRY, MICHAEL PITTS, JON POPYK, FLORENCE RISCO, DEAN ROBINSON, DONALD ROONEY, JOHN SHEA, PALLAVI SHAH, THOMAS SIMKO, KARL SWANSON, MICHELE TESCHKO, GERALD WEBER, DONALD WOODRUFF AND STEVE ZIMNES, DEFENDANTS-APPELLANTS, AND STATE OF NEW JERSEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 16, 1996.
Decided June 18, 1996.
*387 Before Judges BAIME, VILLANUEVA and KIMMELMAN.
Patrick DeAlmeida, Deputy Attorney General, argued the cause for appellants (Deborah T. Poritz, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Mr. DeAlmeida, on the brief).
Paul D. McLemore, argued the cause for respondent (Mr. McLemore, attorney and on the brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D. (Retired and temporarily assigned on recall).
Thirty-four of forty-eight defendants appeal by leave we granted from the trial court's denial of their motion for summary judgment to dismiss defamation counts against them. We reverse.
This lawsuit arises out of events that occurred in 1991. Plaintiff Vinnie M. Feggans, an employee of the State of New Jersey *388 assigned to the Department of Treasury's Office of Telecommunications and Information Systems (OTIS), alleges that she was sexually harassed in April 1991 by co-worker Michael Coleman. In addition to filing a criminal complaint against Coleman, plaintiff asserted a discrimination charge with the Department of Treasury against OTIS management. The department found insufficient evidence to support a finding of probable cause.[1]
At the end of that year, plaintiff's performance evaluation included a warning that she was to perform only State work on State time. In the spring of 1992, plaintiff reported to the then director of OTIS that some of her co-workers, including supervisory personnel, conducted a sports pool on State equipment during work hours. Plaintiff alleged that as a result of this report she was subjected to retaliatory harassment; therefore, she requested a transfer to another directorate at OTIS, the directorate at which the supervisory and co-worker defendants in this action work.
Plaintiff alleges that after her transfer she was subjected to ongoing retaliatory harassment in the form of false reports of disruptive behavior against her. Plaintiff contends that the harassment and retaliation continued from November 1992 through October 1994. Her complaint recounts several interactions with OTIS personnel which, she alleges, resulted in her being unjustly accused of disruptive behavior. In particular, plaintiff complains that on November 29, 1994, Joanne Watkins, another OTIS employee, "grabbed plaintiff by her left arm" and failed to release her grasp until plaintiff "pulled away." As a result of this incident, plaintiff filed charges against Watkins in *389 the Trenton Municipal Court[2] and a grievance through her collective bargaining unit representative.
Thereafter, a petition and memorandum ("petition") dated January 4, 1995, was circulated among OTIS employees, allegedly by Ivan Dommasch, which provided as follows:
We, the undersigned, have been made aware of a situation in which Vinnie Feggans, of our directorate, has filed a criminal complaint against Mrs. Joanne Watkins. Ms. Feggans claims that Mrs. Watkins physically attacked her on the afternoon of November 29, 1994. Such a physical attack is totally uncharacteristic of Ms. Watkins.
We, the undersigned, are also aware that Ms. Feggans previously filed a sexual harassment suit against a fellow employee during her previous assignment in another directorate. That suit was thrown out, but not without causing stress and damage to the reputation of the individual against whom the suit was filed. After the law suit, Ms. Feggans was assigned to this directorate. Ms. Feggan's [sic] is pursuing a similar course of action here, although she is now manipulating the criminal justice system as opposed to the civil court system.
We, the undersigned, attest that since the assignment of Ms. Feggans to this directorate, morale and productivity have markedly deteriorated. Stress and frustration have become commonplace. In fact, since Ms. Feggan's [sic] arrival, stress related health problems have been reported by several individuals directly involved with her. In addition, most employees located anywhere in the vicinity of Ms. Feggans are fearful that she may file an unfounded criminal or civil action against anyone who offends her.
We, the undersigned, cannot tolerate Ms. Feggan's [sic] incorrigible behavior. She has shown herself capable of maliciously attacking the character of any State employee who may have contact with her (in this latest incident, Joanne Watkins). We, the undersigned, therefore request that Vinnie Feggans be physically removed from our work site in such a way that we are no longer required to have any contact with her whatsoever.
Forty-five State employees, including the thirty-four defendants involved in this appeal, signed the petition. Plaintiff contends that the petition is defamatory and that its circulation by Dommasch is evidence of a conspiracy to collectively retaliate against plaintiff.[3]

*390 I
On April 17, 1995, plaintiff initiated this action by filing a sixty-four count complaint against forty-eight defendants, including the State and plaintiff's supervisors and co-workers, asserting claims that include conspiracy, gender discrimination, racial discrimination, unlawful retaliation, sexual harassment, and defamation. Thirty-four co-worker defendants[4] (co-worker defendants or co-workers) moved for summary judgment. Plaintiff cross-moved for an order to deny the co-worker defendants any further legal defense by the State of New Jersey. On October 27, 1995, the trial court denied said defendants' motion and plaintiff's cross-motion. On November 13, 1995, the co-worker defendants filed a motion for leave to appeal, which we granted.

II
The co-worker defendants argue that the trial court erred in its determination that plaintiff produced clear and convincing evidence sufficient to establish a genuine issue of material fact concerning whether they acted with an improper motive or reckless disregard for the truth or falsity of the statements contained in the petition by signing it.

Elements of Cause of Action for Defamation
A statement is defamatory when it "is false and `injurious to the reputation of another' or exposes another person to `hatred, contempt or ridicule' or subjects another person to `a loss of the good will and confidence' in which he or she is held by others." Romaine v. Kallinger, 109 N.J. 282, 289, 537 A.2d 284 (1988). (citations omitted). In order to prove defamation, a plaintiff *391 must establish, in addition to damages, that the defendant (1) made a defamatory statement of fact (2) concerning the plaintiff (3) which was false, and (4) which was communicated to a person or persons other than the plaintiff. Bainhauer v. Manoukian, 215 N.J. Super. 9, 31-34, 42 n. 13, 520 A.2d 1154 (App.Div. 1987); see also Abella v. Barringer Resources, Inc., 260 N.J. Super. 92, 98, 615 A.2d 288 (Ch.Div. 1992) (quoting Restatement (Second) of Torts § 558 (1977)). The fifth element that must be proven is fault. Where, as here, plaintiff is a private figure and the speech is about an exclusively private concern, a traditional negligence standard of fault is applicable, which is defined as communicating the false statement while acting negligently in failing to ascertain the truth or falsity of the statement before communicating it. Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 139 N.J. 392, 402-13, 655 A.2d 417 (1995), cert. denied, ___ U.S. ___, 116 S.Ct. 752, 133 L.Ed.2d 700 (1996); Sisler v. Gannett Co., 104 N.J. 256, 277, 516 A.2d 1083 (1986); Bainhauer v. Manoukian, supra, 215 N.J. Super. at 32-35, 520 A.2d 1154; see also Restatement (Second) of Torts § 580B (1977) (defamation of private person). Fault may also be established by showing that defendant knows the statement is false and that it defames plaintiff or defendant acts with reckless disregard of its truth or falsity. Bainhauer v. Manoukian, supra, 215 N.J. Super. at 32-33, 520 A.2d 1154.

The Qualified Privilege
Our courts have recognized the existence of certain situations in which public interest considerations outweigh the interest in the protection of reputation and persons are allowed to communicate without fear of being sued. Fees v. Trow, 105 N.J. 330, 336, 521 A.2d 824 (1987); Gallo v. Princeton Univ., 281 N.J. Super. 134, 142, 656 A.2d 1267 (App.Div.), certif. denied, 142 N.J. 453, 663 A.2d 1359 (1995). Thus, some otherwise defamatory statements are privileged, i.e., "their publication does not impose liability on the publisher." Dairy Stores, Inc. v. Sentinel Publishing Co., 104 N.J. 125, 136, 516 A.2d 220 (1986).
*392 A privilege may be absolute or qualified. Ibid. An absolute privilege, since it protects even a maliciously-spoken untruth, is provided the publisher of the statement "only in the narrowest of instances, where the public interest in unfettered communication justifies the complete abrogation of the plaintiff's right of recovery for damaged reputation." Fees v. Trow, supra, 105 N.J. at 337, 521 A.2d 824. A conditional or qualified privilege "is designed to advance the important public interest in unrestrained speech while retaining a measure of protection for the plaintiff who is maliciously defamed." Ibid.; Costello v. Ocean County Observer, 136 N.J. 594, 606, 643 A.2d 1012 (1994); Gallo v. Princeton Univ., supra, 281 N.J. Super. at 142, 656 A.2d 1267.
A qualified privilege, applicable to a broader range of circumstances than an absolute privilege, Gallo v. Princeton Univ., supra, 281 N.J. Super. at 142, 656 A.2d 1267, "may be recognized for the protection of the publisher's `own interest, the interest of the recipient or other third person, or an interest common to the publisher and the recipient,'" id. at 143, 656 A.2d 1267 (quoting Bainhauer v. Manoukian, supra, 215 N.J. Super. at 36, 520 A.2d 1154). As we have explained,
[a] qualified privilege for the protection of the publisher's own interest will be recognized "if the circumstances induce a correct or reasonable belief that (a) there is information that affects a sufficiently important interest of the publisher, and (b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest."
[Ibid. (quoting Restatement (Second) of Torts § 594).]
The public policy underlying this qualified privilege is "`that it is essential that true information be given whenever it is reasonably necessary for the protection of one's own interests the interests of third persons or certain interests of the public.'" Erickson v. Marsh & McLennan Co., 117 N.J. 539, 563, 569 A.2d 793 (1990) (quoting Restatement (Second) of Torts § 592A (1965)). However, the qualified privilege protects defamatory remarks uttered in furtherance of the policy that the qualified privilege is designed to accommodate, even if those remarks turn out to be untrue. Fees v. Trow, supra, 105 N.J. at 338, 521 A.2d 824. In *393 addition, the qualified privilege enables principled employees to report actual or suspected misconduct without fear of legal liability for defamation. Ibid.
In determining whether the qualified privilege is a defense, it is irrelevant whether the statement at issue was defamatory. Lutz v. Royal Ins. Co. of Am., 245 N.J. Super. 480, 496, 586 A.2d 278 (App.Div. 1991). Thus, a court need not decide what normally is the threshold question of law, that is, whether a statement was "reasonably susceptible of a defamatory meaning," Kotlikoff v. The Community News, 89 N.J. 62, 67, 444 A.2d 1086 (1982); rather, it will examine the relationship of the parties, the persons to whom the statement is communicated, the circumstances attendant to the statement, and the manner in which the statement is made. Swede v. Passaic Daily News, 30 N.J. 320, 332, 153 A.2d 36 (1959). Thus, a statement "`made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without this privilege, would be slanderous and actionable.'" Lutz v. Royal Ins. Co. of Am., supra, 245 N.J. Super. at 496, 586 A.2d 278 (quoting Bainhauer v. Manoukian, supra, 215 N.J. Super. at 36, 520 A.2d 1154).
Despite plaintiff's allegation that she was defamed by the co-worker defendants, the statements made by them in their petition are entitled to protection from suit by a qualified privilege regardless of whether those statements were defamatory. The statements were made with regard to a common interest, i.e., the interest that each employee has in the condition of his or her work environment. The statements were made to an individual who shares that interest, i.e., the co-workers' supervisor. See, e.g., Lutz v. Royal Ins. Co. of Am., supra, 245 N.J. Super. at 497, 586 A.2d 278. The statements were not excessively published, i.e., the petition was sent only to co-worker defendants' supervisor and plaintiff's union representative. As a consequence, the co-workers' *394 statements fit within those categories of speech which our courts have deemed deserving of protection from suit for defamation by virtue of a qualified privilege.
Although plaintiff apparently does not deny that the qualified privilege applies to the co-workers' statements, she argues that since the co-workers signed the petition "with reckless disregard as to the truth or falsity of the statements" contained therein, they abused the privilege and thus are liable for defamation. In addition, plaintiff contends that the co-worker defendants conspired to retaliate against plaintiff for plaintiff's "whistle-blower" activities, i.e., the co-workers were motivated to sign the petition for reasons other than protecting their respective interests in the condition of their work environment.

The Qualified Privilege May Be Lost Through Abuse
The privilege is abused if (1) the publisher knows the statement is false or the publisher acts in reckless disregard of its truth or falsity; (2) the publication serves a purpose contrary to the interests of the qualified privilege; or (3) the statement is excessively published. Williams v. Bell Tel. Labs., Inc., 132 N.J. 109, 121, 623 A.2d 234 (1993). "`[T]he critical determination is whether, on balance, the public interest in obtaining information outweighs the individual's right to protect his or her reputation.'" Id. (quoting Dairy Stores, Inc. v. Sentinel Publishing Co., supra, 104 N.J. at 151, 516 A.2d 220). See also Bainhauer v. Manoukian, supra, 215 N.J. Super. at 42-43, 520 A.2d 1154; Kass v. Great Coastal Express, Inc., 291 N.J. Super. 10, 21-22, 676 A.2d 1099 (1996).

Plaintiff's Burden of Proof to Defeat a Motion for Summary Judgment
In light of the important interests protected by a qualified privilege, the burden of establishing the existence of a privilege is on the defendant and the burden of proving an abuse of the privilege reposes on the plaintiff. Swede v. Passaic Daily News, supra, 30 N.J. at 332, 153 A.2d 36; Coleman v. Newark *395 Morning Ledger Co., 29 N.J. at 357, 373, 149 A.2d 193 (1959). Proof of abuse of a qualified privilege must be established by the high evidentiary standard of clear and convincing evidence. Williams v. Bell Tel. Labs. Inc., supra, 132 N.J. at 121, 623 A.2d 234; Erickson v. Marsh & McLennan Co., supra, 117 N.J. at 565, 569 A.2d 793. Whether a defendant is entitled to the privilege is a question of law. Hawkins v. Harris, 141 N.J. 207, 216, 661 A.2d 284 (1995). Whether there has been an abuse of such privilege entitling the plaintiff to prevail is a question for the jury. Erickson v. Marsh & McLennan Co., supra, at 117 N.J. 569, 569 A.2d 793. See also Bainhauer v. Manoukian, supra, 215 N.J. Super. at 40-41, 520 A.2d 1154.
Public policy considerations favor the use of summary judgment motions to eliminate baseless defamation claims. See Dairy Stores, Inc. v. Sentinel Publishing Co., supra, 104 N.J. at 157, 516 A.2d 220 (finding that the fear of a lawsuit can stifle commentary on matters of public concern); Costello v. Ocean County Observer, supra, 136 N.J. at 605, 643 A.2d 1012 (explaining that summary judgment constitutes an important tool for dispensing with nonmeritorious claims of defamation). Although, generally, questions of motive are not decided on summary judgment, the Supreme Court has created an exception to the rule: "Because a qualified privilege is favored with a presumption that there was no express malice, plaintiff carries the burden of establishing that the statements complained of were made `from an indirect or improper motive, and not for a reason which would otherwise render them privileged.'" Fees v. Trow, supra, 105 N.J. at 342, 521 A.2d 824 (citation omitted); Lutz v. Royal Ins. Co. of Am., supra, 245 N.J. Super. at 499, 586 A.2d 278.

Whether Plaintiff Submitted Evidence that the Co-Worker Defendants Abused their Qualified Privilege Sufficient to Defeat the Motion for Summary Judgment
The narrow issue on this appeal is whether plaintiff has presented clear and convincing evidence of the co-worker defendants' improper motive or reckless disregard for the truth or *396 falsity of the statements in the petition or excessive publication sufficient to overcome the qualified privilege to withstand a motion for summary judgment.
After hearing oral argument, the trial court denied the co-worker defendants' motion for summary judgment on the grounds that there existed numerous questions of fact. The trial court stated, "The parties are all making different claims. There are obviously hard feelings. There are questions of malice and motive. If there's a qualified privilege, was it abused, et cetera, et cetera."
The co-worker defendants claim that plaintiff failed to produce clear and convincing evidence that they, by virtue of their alleged improper motive or reckless disregard for the truth or falsity of the statements in the petition or excessive publication, abused the qualified privilege that protects the statements made in their petition. Instead, they argue, plaintiff "merely raised factual issues concerning matters of no relevance to the qualified privilege" that protects the co-worker defendants from a lawsuit for defamation.
Plaintiff contends that by the co-worker defendants' reckless disregard of the truth and the excessive publication of their statements, they abused the qualified privilege and, thus, are liable for defamation.[5] Specifically, plaintiff argues that certain facts set forth in her certification, when viewed in a light most favorable to her, "clearly and convincingly establish a genuine dispute as to whether these defendants' signing the defamatory petition was done with reckless disregard as to the truth or falsity of the statements in the memorandum."[6] However, the facts *397 contained in plaintiff's certification do not provide any evidence of a conspiracy[7] on the part of the co-worker defendants, much less clear and convincing evidence of any improper motive underlying their petition requesting that plaintiff be transferred to another job site.
Plaintiff argues that the fact that only three of the co-worker defendants ever worked with her establishes the "reckless disregard for the truth" of all defendants in signing the petition. In addition, she contends that a jury could reasonably infer, among other things, that plaintiff's favorable Performance Assessment Reviews are inconsistent with the assertion in the petition that employee morale and productivity have deteriorated because of plaintiff; the co-worker defendants were motivated to sign the petition by "Dommasch's mission to destroy plaintiff for being a `whistle blower'"; and the purpose of the petition was to "provide misguided support" for a supervisor who was facing criminal assault charges brought by plaintiff.
Plaintiff's theory of defamation and conspiracy against all defendants is presented in her summary of events leading to this lawsuit, i.e., that defendants' "action reflects the culmination of years of harassment and retaliation plaintiff has suffered for no reason other than her having challenged the numerous unlawful acts of the defendants." The facts presented by plaintiff, however, do not support her theory of an improper motive. These facts, instead, merely reiterate the allegations of harassment, discrimination and retaliation that she has made against her supervisors. *398 The alleged fact that Dommasch, one of the supervisory defendants, circulated the petition does not provide a nexus between the claims of discrimination and retaliation against the supervisory defendants and the claims of defamation against the co-worker defendants. Such claims are of no significance to the issue of the co-worker defendants' alleged improper motive or reckless disregard for the truth; the repetition of those claims in the counts against each individual co-worker defendant provides no basis on which to overcome the co-workers' qualified privilege.
In the first twenty-three counts of the complaint, for example, plaintiff alleges various specific incidents of harassment, denial of overtime opportunities, racial bias, denial of her right to due process, disparate testing and training procedures, and intentional infliction of emotional distress. These charges, among others, are asserted against the State of New Jersey and thirteen other individuals who appear to have had some supervisory capacity over plaintiff. Significantly, these named supervisory defendants did not move for summary judgment before the trial court.
Counts twenty-four through sixty-one name the co-worker defendants and others.[8] Count twenty-five against Maxwell Bricks is representative of these counts and merely repeats the allegations of the first through twenty-three counts. The only allegation specific to Bricks  as with the counts specific to the other thirty-three co-worker defendants  is that he signed the petition against plaintiff.
Plaintiff has not and cannot convincingly argue that she alleges each of the counts against every defendant. For example, count five alleges that Linda Spano submitted a false report regarding plaintiff's behavior. Count eight alleges that J.S. Wiedemann denied plaintiff her right to due process when he sustained on appeal his own decision to suspend plaintiff for two days. Count ten alleges that Gregory Bac provided plaintiff with training different from that of her co-workers and harassed her for use of *399 the telephone. Given the detail and specificity with which each count of the complaint names each particular defendant and the counts relevant to that defendant, it is clear that plaintiff's incorporation by reference of the preceding counts into her defamation claims was a matter of form rather than substance.[9]
Plaintiff has not presented evidence sufficient to create a nexus between her claims against the supervisory defendants and the claims of defamation against the co-worker defendants. Therefore, although plaintiff argues in her brief that her claims of a conspiracy of retaliation and/or discrimination by her supervisors show an improper motive sufficient to vitiate their qualified privilege against the claim of defamation, she cannot make the same argument with respect to the co-worker defendants. Plaintiff argues that the signing of the allegedly libelous petition was in furtherance of the conspiracy. The acts of plaintiff's supervisors are of no significance as to whether the co-worker defendants acted with an improper motive or reckless disregard of the truth when they signed the petition.
Lastly, publication of the petition was not excessive. Excessive publication occurs where defendants could have no reasonable belief that the publication was an appropriate means of communicating the defamatory matter to another to whom the publication is privileged. Bainhauer v. Manoukian, supra, 215 N.J. Super. at 43, 520 A.2d 1154. Here, the co-worker defendants sent their petition to their supervisor, John Waldner, Supervisor of Client Systems at OTIS, and James Tarlou, plaintiff's union representative. Clearly, a supervisor has an interest in receiving communications from employees with respect to work conditions and relationships among fellow employees. See Lutz v. Royal Ins. Co. of Am., supra, 245 N.J. Super. at 498, 586 A.2d 278. Moreover, the co-worker defendants would have had a reasonable belief that it was proper to send the petition to plaintiff's union representative *400 since he had represented plaintiff's interests in several grievance matters linked to the incidents set forth in the petition.
The Supreme Court recently explained that "a court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that creates a `genuine issue as to any material fact challenged.'" Brill v. Guardian Life Ins. Co., 142 N.J. 520, 529, 666 A.2d 146 (1995). Moreover, "when the evidence is so one-sided that one party must prevail as a matter of law the trial court should not hesitate to grant summary judgment." Id. at 540, 666 A.2d 146.

CONCLUSION
Plaintiff has failed to produce clear and convincing evidence by which a reasonable fact finder could conclude that the co-worker defendants had conspired with the supervisory defendants in contravention of the goals of the qualified privilege, had excessively published the petition or were primarily motivated by an improper motive or displayed reckless disregard for the truth or falsity of the statements when they signed the petition.
The trial court's denial of the co-worker defendants' motion for summary judgment to dismiss the complaint against them is reversed.
NOTES
[1] In September 1991 plaintiff appealed the decision of the Department of Treasury to the Department of Personnel, Division of EEO/AA. In June 1994 the Department of Personnel adopted the "no probable cause" decision of the Department of Treasury. Plaintiff's appeal of that decision is pending. The State's alleged "dilatoriness in resolving plaintiff's longstanding charge of sexual harassment" forms the basis for count one of plaintiff's complaint. It appears from the record that the criminal complaint was dismissed.
[2] Defendants' brief indicates that Watkins was acquitted of the municipal court charges.
[3] Prior to filing the complaint in this matter, plaintiff sent Dommasch a letter seeking his retraction of the defamatory statements, but he never responded. An identical letter was sent to each of the other forty-four persons whose names appear on the petition, five of whom responded and retracted the content of the memorandum. Those five persons are not included in this lawsuit.
[4] The remaining defendants are represented by separate counsel and have filed answers in response to the complaint. These non-moving defendants are referred to herein as "supervisors" or "supervisory defendants."
[5] Plaintiff's brief in opposition to the motion for summary judgment submitted to the trial court argued that defendants were not entitled to a qualified privilege; plaintiff appears to have abandoned that argument on appeal and we do not consider the issue.
[6] Plaintiff has never alleged that the co-worker defendants negligently signed the petition nor is there any reasonable basis to find that they did so negligently.
[7] Plaintiff's conspiracy theory is as follows: "[T]he wrongful acts of all defendants in this action are the result of a conspiracy among the defendants as asserted in the First Count, Paragraphs 2 through 4." Paragraph 4 is the most relevant allegation concerning the co-worker defendants and reads as follows: "From at least April 1991 and continuously thereafter up to the present, ... said individually named defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others for the purpose of taking reprisals against plaintiff because she was engaged in protected activities.' The acts of [the co-worker] defendants in furtherance of the conspiracy were their signing of the libelous petition against plaintiff."
[8] Counts sixty-two through sixty-four are against the State of New Jersey.
[9] Spano, Wiedemann and Bac are supervisory defendants.