**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2608-18T4

EVELYN JEFFERSON,

    Plaintiff-Appellant,

v.

THE COMMUNITY HOSPITAL
GROUP d/b/a JFK MEDICAL
CENTER, and JEAN LANDEN,

    Defendants-Respondents.

_____

Argued January 23, 2020 – Decided February 18, 2020

Before Judges Koblitz, Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1751-16.

Michael G. Kane argued the cause for appellant (Cashdan & Kane, LLC, attorneys; Michael G. Kane, of counsel and on the brief).

Lawrence Bluestone argued the cause for respondent (Genova Burns LLC, attorneys; John C. Petrella and Lawrence Bluestone, of counsel and on the brief).

PER CURIAM

Plaintiff Evelyn Jefferson appeals the January 18, 2019 order granting summary judgment to defendants The Community Hospital Group, Inc., d/b/a JFK Medical Center (JFK) and its human resources manager, Jean Landen, dismissing plaintiff's complaint with prejudice. Plaintiff's conditional offer for a registered nurse position at the United States Department of Veteran Affairs New Jersey Health Care System (VA) was revoked when Landen informed the VA that plaintiff, who worked on a per diem basis at JFK, was involuntarily terminated for failing to comply with occupational health requirements. Although plaintiff authorized the disclosure of her employment information and released from liability all those who provided such information in good faith, she asserts the defendants are not protected by a qualified privilege. We disagree and affirm.

## I. Factual background.

Plaintiff's amended four-count complaint against defendants asserts: (1) defamation; (2) negligent or reckless misrepresentation; (3) negligence or recklessness in omitting relevant facts; and (4) tortious interference.

In early 2015, plaintiff applied for a registered nurse position at the VA. In April of that year, the VA made a conditional offer of employment to her, subject to a background check. Plaintiff completed the "Application for Nurses and Nurse Anesthetists" form on which she certified that she had not been discharged from

employment within the last five years. She also signed and dated the "Credentialing Release of Information Authorization" and "Authorization for Release of Information" forms authorizing the VA to obtain information about her educational and professional background from entities such as her former and current employers. Both of these forms included the language that plaintiff "release[d] from liability all those who provide information to the [VA] in good faith and without malice in response to such inquiries."

Plaintiff was employed sporadically at JFK from 2012 to 2013 as a per diem registered nurse. In June 2015, the VA sent JFK an inquiry about plaintiff's employment and included her signed "Credentialing Release of Information Authorization" form. While the VA attached a document, titled "Inquiry Concerning Applicant for Employment," for JFK to complete, JFK used its own "employee verification" form (EVF), which stated that the information was disclosed "pursuant to the Health Care Professional Responsibility and Reporting Enhancement Act," commonly referred to as the Cullen Law, N.J.S.A. 26.2H-12.2a to -12.2d. Landen responded to the VA's request the next day by reviewing JFK's payroll system and plaintiff's personnel file. Landen testified that she only completed part of the EVF and an unknown person wrote plaintiff's name, hire date and separation date, and "per diem" under the category "[v]oluntary [r]easons" for separation.

A-2608-18T4

Landen also checked the EVF line indicating plaintiff was "eligible for rehire." In response to the question about when plaintiff received her last performance evaluation, Landen wrote that plaintiff was "not here long enough for [a] full evaluation." Landen testified that at the time she submitted the EVF, no evaluation existed in the system, but after receiving plaintiff's counsel's demand letter, a full evaluation was found.

While the EVF indicated that plaintiff was employed from October 8, 2012 to September 14, 2013, after receiving a demand letter from plaintiff's counsel months later, Landen learned that plaintiff's last day at JFK was in October 2013. While the payroll listed the reason for plaintiff's termination with "a generic code, like 'other,'" her personnel file explained that she was terminated for "[n]on[-]compliance [with] flu shot." Landen testified that because receiving a flu shot was an occupational health requirement, she included that language on the EVF under the category "[i]nvoluntary [r]easons" for separation. Thus, the EVF included a reason for both a voluntary and involuntary separation.

JFK's flu shot policy, mandating all healthcare personnel to be vaccinated and to "provide written documentation of receipt of the vaccine or an approved declination," became effective in September 2013. Andrew Kuziemski testified that at the time he had oversight of the "occupational medicine and employee health"

A-2608-18T4

department and was responsible for ensuring employees complied with the flu shot policy. Plaintiff's name remained on an employee list as non-compliant. On December 23, 2013, the vice president of patient care services signed a personnel action form, terminating plaintiff from JFK for not complying with the flu policy. The form listed plaintiff's last day of work as September 14, 2013.

In July 2015, the VA informed plaintiff by letter that because she did not disclose her involuntary termination from JFK, her conditional offer was revoked. Plaintiff then contacted JFK's human resources department, which informed her that if the VA sends it a letter explaining why it revoked her conditional offer it will make "the corrections." In August 2015, plaintiff shared this information via email with the VA's human resources specialist who then forwarded plaintiff's message to her colleagues, but the VA refused to reconsider.

In the first part of December 2015, plaintiff sent a letter to the VA asking it to reinstate her offer. She explained that JFK erred in stating that she was terminated involuntarily for not complying with the flu shot policy, because she had received a flu shot. She enclosed a revised EVF completed by JFK in November 2015. The revised form corrected her hire date to October 6, 2012 and separation date to October 25, 2013. Although the form still mentioned plaintiff was not employed long enough to complete an evaluation, it indicated she was terminated voluntarily

A-2608-18T4

only, listing the reason again as "per diem." Plaintiff also enclosed her flu shot records from East Orange General Hospital, her then full-time employer, which demonstrated she got a flu shot on October 1, 2013. After reviewing this information, the VA refused to reconsider.

Later in December 2015, Landen sent a letter to the VA clarifying that the notation on its original submission indicating plaintiff was involuntarily terminated for "non[-]compliance with Occupational Health requirements," referenced its flu shot policy, which "[s]ubsequent to [its] submission . . . Ms. Jefferson submitted documentation . . . that she received the flu vaccination." The VA still did not change its decision.

## II. Standard of review.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Ibid. (quoting R. 4:46-2(c)).

A-2608-18T4

Without making credibility determinations, the court considers the evidence "in the light most favorable to the non-moving party" and determines whether it would be "sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). If the evidence presented "show[s] that there is no real material issue, then summary judgment should be granted." Walker v. Atl. Chrysler Plymouth, Inc., 216 N.J. Super. 255, 258 (App. Div. 1987). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the [summary judgment] motion." Puder v. Buechel, 183 N.J. 428, 440–41 (2005).

### III. Waiver of liability.

Plaintiff argues that because the EVF states that JFK provided information pursuant to the Cullen Law, defendants waived the protection of common law qualified privilege. Claiming to disclose information pursuant to an inapplicable theory, however, does not bar application of other valid disclosure waivers. Our courts afford an "employer . . . a qualified privilege to provide a negative reference in response to an inquiry from a prospective employer." Senisch v. Carlino, 423 N.J. Super. 269, 278 (App. Div. 2011); Erickson v. Marsh & McLennan Co., Inc., 117 N.J. 539, 564 (1990). A prospective employer has "a legitimate and obvious interest

A-2608-18T4

in the professional qualifications, skills, and experience of [a candidate], including the reasons for . . . termination." Erickson, 117 N.J. at 564.

If a statement made in furtherance of this policy is discovered to be untrue, qualified privilege will protect against liability, unless the privilege was abused by the speaker who "act[ed] in reckless disregard of its truth," the public policy was not served, or "the statement is excessively published." Feggans v. Billington, 291 N.J. Super. 382, 394 (App. Div. 1996)

"The public policy underlying . . . [the] qualified privilege is 'that it is essential that true information be given whenever it is reasonably necessary for the protection of one's own interests, the interests of third persons or certain interests of the public.'" Id. at 392 (quoting Erickson, 117 N.J. at 563). This is particularly true in the health field where patients' welfare is at stake.

The court "will examine the relationship of the parties, the persons to whom the statement is communicated, the circumstances attendant to the statement, and the manner in which the statement is made." Id. at 393. "A communication 'made bona fide upon any subject-matter in which the party communicating has an interest . . . to a person having a corresponding interest,'" will be privileged. Erickson, 117 N.J. at 563 (quoting Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 375 (1959)). Defendants met their burden to prove the existence of a qualified privilege when

providing the reasons for terminating plaintiff as a per diem registered nurse at JFK, serving both a public and private interest that outweighed plaintiff's reputational interest.

In connection with the JFK employment disclosure, plaintiff also twice expressly "release[d] from liability all those who provide information to the [VA] in good faith and without malice in response to such inquiries." The motion court found "no evidence of malice on [the] part of the [d]efendant[s], and that they acted in good faith."

Based on the evidence, the mistakes made in JFK's initial EVF were inadvertent, though perhaps negligent. JFK twice responded to plaintiff's requests, attempting to correct the information, evidencing a lack of ill intent. JFK clarified that plaintiff had taken the flu shot and had not been involuntarily terminated. The fact that the VA was stubbornly unrelenting does not establish malice on the part of defendants.

We regret the seemingly harsh resolution of this matter, especially when plaintiff did not know the JFK records reflected she was involuntarily terminated until after she certified she had never been involuntarily terminated. As a per diem employee, she was not informed of the termination and had no opportunity to present evidence to JFK to rectify the situation. Undoubtedly, JFK made several mistakes

A-2608-18T4

in reporting plaintiff's employment records to the VA. Thus, we have a wrong without a remedy provided by this litigation. The greater public good of encouraging employers to report negative information about employees to future employers, especially in the crucial healthcare industry, must take precedence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION