**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1241-24

ROBERT MONTGOMERY,

    Plaintiff-Appellant,

v.

ATLANTIC CITY ELECTRIC
COMPANY, PEPCO
HOLDINGS, LLC, and
EXELON CORPORATION,

    Defendants-Respondents.

_____

Submitted December 16, 2025 – Decided January 13, 2026

Before Judges Perez Friscia and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0268-22.

Jacobs & Barbone, PA, attorneys for appellant (David A. Castaldi, on the briefs).

Montgomery McCracken Walker & Rhoads, LLP, attorneys for respondents (William K. Kennedy and Alexandra S. Jacobs, on the brief).

PER CURIAM

Plaintiff Robert Montgomery appeals from a November 22, 2024 order granting summary judgment in favor of defendants Atlantic City Electric Company (ACE), Pepco Holdings, LLC (PHI), and Exelon Corporation (Exelon) dismissing his New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, and defamation claims against them. Having reviewed the record and applicable law, we affirm substantially for the reasons set forth in Judge Jean S. Chetney's thorough and well-reasoned oral opinion.

I.

We summarize the facts in the record viewed in the light most favorable to plaintiff, the non-moving party. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). ACE is a public utility company. ACE's parent company, PHI, is a subsidiary of Exelon. Beginning on June 19, 2017, plaintiff worked for defendants as a frontline supervisor.[1] As a frontline supervisor, plaintiff oversaw a group of employees who were dispatched to address emergent issues, such as outages.

From June 2017 until February 2019, plaintiff worked in ACE's Cape May Courthouse location. In February 2019, plaintiff was transferred to the

---

[1] Plaintiff refers to defendants collectively as his employer. Defendants contend plaintiff was employed by ACE. We accept plaintiff's contention as the non-moving party. This distinction, however, is not relevant to the issues raised on appeal.

Bridgeton location "where he oversaw the overhead department and the trouble department[] and was [the] acting manager of the location." Les Jones was one of the employees plaintiff supervised at both locations.

On July 27, 2021, Jones worked overnight on emergency calls. In the early morning hours of July 28, he accepted an emergency dispatch call prior to his next shift that was scheduled to begin at 7:00 a.m. He arrived at the job site at approximately 12:06 a.m. and was told he was not needed. Jones remained on the clock and parked his truck. At approximately 7:00 a.m., plaintiff checked ACE's fleet management system and discovered Jones's truck had not moved for three to four hours.

Plaintiff reported the situation to his district manager, Barry Downes, who told plaintiff to go to the location and "take a look." When plaintiff arrived at approximately 8:10 a.m., he found Jones asleep in the truck. The truck was running, Jones was fully reclined with a pillow behind his head, and there was a jacket covering the dashboard lights. Plaintiff woke Jones and told him to return to the ACE building. Plaintiff reported the incident to Downes. Plaintiff and Downes then met with Jones and two union representatives to discuss the matter.

On July 29, 2021, Jones filed an ethics complaint against plaintiff alleging he was "discriminating against Jones and had been singling Jones out since

3

2019." He claimed plaintiff was "always looking for the things that [Jones] [wa]s doing wrong. [Jones] [wa]s the only African American . . . man in the overhead trouble department, and [plaintiff] who is Caucasian, [wa]s making it very hard for [Jones] to work." Jones testified at his deposition that he "was upset about [plaintiff] reporting him for sleeping in his truck" when he made the complaint and had never complained about plaintiff previously.

On August 12, 2021, there was a "consensus call" amongst Jones's supervisors, including plaintiff and Downes, and representatives of defendants' human resources department to discuss the July 28 incident. Plaintiff "did not make any recommendation as to discipline nor did he determine which [e]mployee [s]tandards of [c]onduct Jones violated." Defendants determined Jones violated the employee standards of conduct by neglecting his job duties, sleeping during work time, making unauthorized stops, and falsifying company time sheets. He was suspended without pay for five days.

On August 13, 2021, Jones added an update to his July 29 ethics complaint, contending:

> [Plaintiff] has kept discriminating against [Jones]. [Plaintiff] has kept checking [Jones's] records [i]n order to find fault at [Jones]. There are other African-[American] employees (names and job titles withheld) who have been disrespected by [plaintiff]. Cindy (last name unknown), time keeper, [T.M.], work lead, and

4

[T.F.], lineman, have witnessed [plaintiff's] discrimination.

Defendants assigned Stacey Jackson to investigate Jones's ethics complaint. Jackson conducted a six-month investigation, during which she interviewed Jones, plaintiff, and nine other current and former employees. Jackson summarized the findings of her investigation and her conclusions in a thirty-seven-page investigation report dated January 10, 2022.

Jackson found plaintiff "violated Exelon's Code of Business Conduct by engaging in behavior that makes non-white employees feel disrespected and excluded, as well as by withholding coaching and support from various non-white employees." She determined plaintiff violated two provisions of Exelon's Corporation Code of Business Conduct–"Living Diversity and Inclusion" and "Promoting a Respectful Workplace," and Exelon's Human Resources "Policy Against Discrimination, Harassment, and Retaliation."

Jackson was "mindful that Jones'[s] ethics complaint closely followed [plaintiff] disciplining him for sleeping in his truck. Such would give Jones a motive to make a claim of impropriety against [plaintiff]." However, she noted "two things can be true at once; Jones could have been motivated to make this claim because he was disciplined[,] and [plaintiff] could be treating non-white employees in an improper fashion as alleged at the same time." On February

5

14, 2022, plaintiff's "employment with [ACE]" was terminated based on alleged "violations of Employee Standards of Conduct, Exelon Code of Business Conduct, and Company policy, which independently or in combination warrant[ed] termination."

On February 15, 2022, PHI executives sent a letter by email to employees of PHI and ACE titled, "Reaffirming Our Values and Culture of Respect" (the Letter). The Letter stated:

> We recently completed an investigation into acts by our own employees that were counter to the inclusive culture we value and are working to sustain. These acts included inequitable treatment of team members[,] and using language and engaging in behaviors that created an uncomfortable and unwelcome workplace environment. Under our policies, these behaviors were terminable offenses at PHI and Exelon.[2]

On May 16, 2022, plaintiff filed his complaint in this matter alleging causes of action for violations of CEPA and defamation. On August 29, 2022, the court granted defendants' motion to dismiss the CEPA claim for failure to state a claim pursuant to Rule 4:6-2(e). We reversed that order and remanded

---

[2] One of the authors of the letter, Tamla Oliver, testified at her deposition that the Letter was sent in connection with a disciplinary matter unrelated to plaintiff involving an employee identified as J.D. As did the trial judge, we will accept plaintiff's allegation that the Letter referred to him.

A-1241-24

the matter for discovery. <u>Montgomery v. Atl. City Elec. Co.</u>, No. A-0519-22 (App. Div. Mar. 10, 2023).

II.

After the completion of discovery, defendants moved for summary judgment. On November 22, 2024, following oral argument, Judge Chetney entered an order granting defendants' motion supported by an oral opinion. She dismissed plaintiff's CEPA claim because he did "not provide[] sufficient evidence to rise to the level of a disputed material fact that there was a causal connection between his report of . . . Jones and [his] termination."

The judge noted plaintiff's claim that defendants "retaliate[d] against [him] for reporting a fellow employee who was . . . essentially defrauding the company" did not "make any sense." She found there was "no evidence that the termination of [plaintiff] was in retaliation for something," nor was there "even an allegation that [plaintiff] made a report against . . . any of the defendants that would cause them to be angry, or upset, or have a motive to terminate."

The judge "considered that the report by [plaintiff] of . . . Jones resulted in . . . Jones making a report to the defendants about [plaintiff]," but "[i]t was . . . Jones [who] made the report." She found "[t]here[ is] no evidence that the defendants . . . instituted, or even encouraged, or requested any information about [plaintiff] in an attempt to retaliate against him." The judge determined

"it was . . . Jones who" instigated the investigation of plaintiff and Jones "was angry at [plaintiff] for reporting him . . . but . . . Jones is separate and distinct from the defendants."

The judge also "considered plaintiff's arguments that there [we]re various deficiencies in the defendant[s'] investigation report" but did not "find that those are material issues of fact in dispute." She concluded, "even if the[re] were deficiencies in the investigation, there[ is] still a lack of evidence that would connect the termination to the whistle-blowing activity."

The judge dismissed plaintiff's defamation claim because "there [was] insufficient evidence that any of the statements" in the Letter "even if they [were] made about . . . plaintiff, are false." She noted "there[ is] no dispute that . . . defendants conducted an investigation and they made various findings" and the Letter "states that the defendants completed an investigation into acts by employees that were counter to inclusive culture." The judge determined it was "just a true statement, it[ was] not anything defamatory."

The judge found the remainder of the Letter contains "a statement . . . by the defendants about what [they] found, and th[e] different matters that were investigated." The Letter "goes on to say that under the policies these behaviors were terminable offenses." The judge determined "again, this is a true statement, the behaviors, if they occurred, were terminable offenses, and in fact resulted in

8

the termination of . . . plaintiff."  The judge concluded plaintiff offered "insufficient evidence of any untrue statement" in the Letter, and there was "insufficient evidence upon which a jury could find that the defendants . . . are liable for defamation."  This appeal followed.

On appeal, plaintiff argues the judge incorrectly determined there was insufficient evidence of a causal connection between plaintiff's whistle-blowing activity and his termination.  He contends the judge "fail[ed] to appreciate the nuanced context of a Fortune 500 company."  Specifically, that "Jones, who clearly was motivated by retaliation" was "not 'separate and distinct' from [d]efendants" when he "fed the investigator witnesses of his choosing."  He contends "Jones effectively used the employer as an agent of retaliation against [plaintiff] and [d]efendants participated in the retaliation against [him]."  He argues "one can draw a through line from [plaintiff's] reporting of . . . Jones to [d]efendants' decision to terminate [him]."

Plaintiff also contends the judge improperly dismissed his defamation claim.  He argues that "[w]hether [he] engaged in acts of inequitable treatment" was disputed and the Letter "essentially stated that [he] engaged in acts of inequitable treatment and was fired because of it."

## III.

Our review of a trial court's grant or denial of a motion for summary judgment is de novo. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Like the trial court, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540.

"By its plain language, Rule 4:46-2 dictates that a court should deny a summary judgment motion only where [a] party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" Id. at 529 (emphasis omitted). Insubstantial arguments based on assumptions or speculation are not enough to overcome a motion for summary judgment. Ibid.

## A.

Based on our de novo review, we are convinced the judge correctly dismissed plaintiff's CEPA claim because he failed to offer any competent evidence establishing a causal connection between his report of the incident involving Jones on July 28, 2021, and his termination. CEPA provides, in relevant part, an employer is prohibited from taking retaliatory action against an employee who:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes:

> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ; or
>
> (2) is fraudulent or criminal . . . ;

[N.J.S.A. 34:19-3(a).]

In <u>Dzwonar v. McDevitt</u>, 177 N.J. 451, 462 (2003), our Supreme Court explained that in order to prevail on a CEPA claim, a plaintiff must demonstrate:

> (1) [they] reasonably believed that [their] employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) [they] performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3[(c)]; (3) an adverse employment action was taken against [them]; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

A plaintiff can show a causal connection exists between the whistleblowing activity and the adverse employment action through "inferences that the trier of fact may reasonably draw based on circumstances surrounding the employment action." <u>Maimone v. City of Atlantic City</u>, 188 N.J. 221, 237 (2006). "The temporal proximity of employee conduct protected by CEPA and [the] adverse employment action is one circumstance that may support an inference of a causal connection." <u>Ibid.</u>

11

Based on our de novo review, we are satisfied the judge correctly determined plaintiff failed to present competent evidential materials sufficient to defeat summary judgment on his CEPA claim. As the judge found, the evidence shows plaintiff was terminated based on defendants' investigation into his allegedly inappropriate conduct and the findings and conclusions of that investigation as detailed in Jackson's January 10, 2022 report.

The record is devoid of any evidence supporting plaintiff's claim that he was terminated because he reported misconduct by Jones on July 28, 2021. Plaintiff's claim that Jones "effectively used [defendants'] as an agent of retaliation" is precisely the type of insubstantial argument based on assumptions or speculation that is not enough to defeat a motion for summary judgment. Brill, 142 N.J. at 529. Because plaintiff failed to present competent evidence from which a rational factfinder could conclude his termination was causally related to his whistle-blowing activity, his CEPA claim was properly dismissed.

B.

We are also persuaded the judge correctly granted summary judgment on plaintiff's defamation claim. In order to prove defamation:

> a plaintiff must establish, in addition to damages, that the defendant (1) made a defamatory statement of fact (2) concerning the plaintiff (3) which was false, and (4) which was communicated to a person or persons other than the plaintiff. The fifth element that must be proven

is fault. Where, as here, plaintiff is a private figure and the speech is about an exclusively private concern, a traditional negligence standard of fault is applicable, which is defined as communicating the false statement while acting negligently in failing to ascertain the truth or falsity of the statement before communicating it.

[Feggans v. Billington, 291 N.J. Super. 382, 390-91 (App. Div. 1996) (internal citations omitted).]

Based on our de novo review, we are convinced the judge correctly determined the allegedly defamatory statements contained in the Letter, if they were about plaintiff, fairly and accurately summarized defendants' investigation and were not false. We do not perceive any basis to conclude the judge erred by dismissing plaintiff's defamation claim.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division