**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2885-24

RACHEL MERCER,

    Plaintiff-Appellant,

v.

THE GLOUCESTER TOWNSHIP
BOARD OF EDUCATION, THE
GLOUCESTER TOWNSHIP
PUBLIC SCHOOLS, GLEN
LANDING MIDDLE SCHOOL,
STEPHEN KLINE, and ORLANDO
MERCADO,

    Defendants-Respondents.

_____

Argued April 22, 2026 – Decided June 11, 2026

Before Judges Paganelli, Vanek and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1672-20.

Steven E. Angstreich argued the cause for appellant (Weir LLP, attorneys; Steven E. Angstreich, on the briefs).

William J. Moates argued the cause for respondents (O'Toole Scrivo, LLC, attorneys; Jeffrey C. Maziarz and William J. Moates, on the brief).

PER CURIAM

Plaintiff Rachel Mercer appeals from a March 11, 2025 Law Division order granting summary judgment in favor of defendants, the Gloucester Township Board of Education, Gloucester Township Public Schools, Glen Landing Middle School, and school officials Stephen Kline and Orlando Mercado, and a May 2, 2025 order denying plaintiff's reconsideration motion. We affirm.

I.

We glean the salient facts from the summary judgment record, viewed in the light most favorable to the plaintiff, as the non-moving party. See R. 4:46-2(c); Christakos v. Boyadjis, 262 N.J. 447, 462 (2026). In early 2018, plaintiff began working for Source4Teachers, a substitute teacher placement agency, and was assigned as the building-substitute teacher for Glen Landing Middle School. On April 23, 2019, the Gloucester Township Police Department received a report from a parent alleging that A.W., a middle school student, had described an inappropriate relationship with a twenty-five-year-old female substitute teacher identified as "Mrs. Meads." The parent reported the alleged relationship

A-2885-24

began in September 2018 and may have involved inappropriate physical or electronic contact. The report was referred to the Division of Child Protection and Permanency (DCPP).

On April 24, 2019, the assigned DCPP investigator notified Assistant Principal Stephen Kline that interviews would be conducted at the school regarding the allegations. On arrival at the school, the investigator advised Kline the substitute teacher identified in the DCPP report was a twenty-five-year-old female with the last name "Meads" and asked him whether an individual fitting that description worked at the school.

Kline had access to two lists that included the names and gender of substitute teachers who had worked at the school during the previous two school years. However, neither list provided the teachers' ages. In the 2017-2018 school year, thirty-one female substitute teachers worked at the school, five with a last name beginning with "M." In the 2018-2019 school year, there were thirty-five female substitutes, six with a last name starting with "M."

Kline did not offer the lists to the investigator. Instead, as recorded in the DCPP Investigation Summary, Kline verbally responded to the investigator's inquiry by stating, "[w]e don't have a Ms. Meads. We have a teacher with a

A-2885-24

name close to that, the only 25-year-old female substitute I can think of is Ms. Mercer, Rachel Mercer."

The investigator interviewed A.W., who denied knowing any individual named "Ms. Meads" or having an inappropriate relationship with plaintiff. A.W. acknowledged telling friends that "she really like[d] Ms. Mercer as a sub." The investigator also interviewed A.W.'s mother, who denied knowledge of the alleged relationship.

The investigator interviewed A.W.'s friend, K.C., whose parent had initiated the complaint. K.C. reported A.W. had told her and others she was involved in a relationship with a substitute teacher and identified plaintiff as that individual. K.C. described various interactions, including the allegation A.W. and plaintiff had communicated outside of school and had seen each other naked. K.C. also stated A.W. told her the day of the interview she had lied about the relationship.

After advising her of the nature of the allegations, the investigator then interviewed plaintiff. Plaintiff denied having any relationship with A.W. The same day, school administrators, including Kline and Human Resources Supervisor Orlando Mercado, informed plaintiff an allegation had been made,

directed her to leave the school premises, and advised her not to return pending the investigation results.

In the weeks that followed, the investigator conducted additional interviews, including three students identified by K.C. Each of these students reported A.W. had claimed to be involved with plaintiff, although several indicated A.W. later stated the claims were a joke or untrue. None of the students reported witnessing any inappropriate conduct. The investigator also conducted a follow-up interview with plaintiff, during which she was represented by counsel. Plaintiff again denied the allegations.

After the investigator contacted plaintiff's employer, she was suspended by the agency pending the outcome of the investigation. In June 2019, DCPP concluded its investigation and determined the allegations against plaintiff were "unfounded." Law enforcement ultimately declined to pursue criminal charges against plaintiff.

On May 10, 2020, plaintiff filed a complaint against defendants, alleging defamation, libel, slander, negligence, and intentional and negligent infliction of emotional distress. Defendants moved to dismiss the complaint pursuant to Rule 4:6-2(e). On January 22, 2021, the judge granted defendants' motion,

A-2885-24

dismissed the complaint without prejudice, and permitted plaintiff to file an amended complaint.

Plaintiff then filed an amended complaint that included the same causes of action and alleged one or more school employees identified her as the teacher involved in the alleged relationship. The judge denied defendants' subsequent motion to dismiss the amended complaint.

During discovery, plaintiff deposed Kline, Mercado, and various school staff members. Mercado testified he was unaware of any policy governing Kline's response to the DCPP investigator's inquiry. Mercado also testified he would have advised Kline to offer the lists of all substitute teachers' names rather than volunteer plaintiff's name, but Mercado was unaware of any policy requiring a preferred course of action under such circumstances. All school personnel deposed denied having been told about the accusation against plaintiff.

Defendants moved for summary judgment. On March 11, 2025, the judge granted defendants' motion and in an oral decision dismissed the amended complaint. The judge determined the school did not initiate the report to DCPP and was required to cooperate with the investigation. The judge found Kline responded to the investigator's inquiry about a 25-year-old substitute teacher

6

named "Meads" by identifying plaintiff. The judge concluded Kline's identification was reasonable under the circumstances based on the record which demonstrated plaintiff was the building-substitute and the only substitute-teacher who matched the description the DCPP investigator had provided. The judge also determined Kline was not obligated to give the investigator a list of substitute teachers. The judge further found Kline's response demonstrated an attempt to assist DCPP's investigation, rather than an effort to accuse plaintiff of any misconduct.

The judge noted the DCPP investigator had conducted multiple interviews with students and other witnesses prior to determining the allegations were unfounded, and the investigator then found the student statements identifying plaintiff were consistent with the underlying rumor and were not the product of improper conduct by school officials.

The judge applied the summary judgment standard and concluded defendants were entitled to judgment as a matter of law. The judge determined Kline's statement identifying plaintiff was not wrongful, did not violate plaintiff's rights, and did not constitute actionable conduct. The judge found the defendants acted appropriately in cooperating with the DCPP investigation and did not engage in conduct giving rise to liability.

7

The judge denied plaintiff's motion for reconsideration and clarified the rationale underpinning his decision to grant summary judgment to defendants. The judge found Kline's statement to the DCPP investigator was not defamatory because it was true—the DCPP investigation revealed plaintiff was indeed the subject of the allegation eventually deemed "unfounded." The judge further found there was no evidence the allegation was communicated to other staff, so there was no basis for a jury to find defendants liable for slander per se, and defendants' conduct was not "extreme and outrageous" as required to prove intentional infliction of emotional distress.

On appeal, plaintiff contends the judge improperly made factual and credibility determinations that should have been left to a jury. Plaintiff also argues the judge ignored the "law of the case" doctrine by granting summary judgment on the basis of statutory immunity, despite having previously denied defendants' motion to dismiss on that basis. Plaintiff further maintains statutory immunity for reporting child abuse only applies when there is "reasonable cause to believe" abuse occurred, which was not present here. She asserts Kline's actions were reckless and defamatory because he had no reasonable grounds to suspect plaintiff. Additionally, plaintiff contends the judge dismissed her entire complaint without addressing several of her claims, including slander per se,

8

intentional and negligent infliction of emotional distress, and negligent disclosure of the investigation.

Defendants argue plaintiff was the subject of the DCPP investigation from the outset and Kline acted reasonably and appropriately in cooperating with DCPP's investigation. Defendants assert Kline's identification of plaintiff was based on information provided by the DCPP investigator, and there was no evidence of malice or recklessness. They maintain plaintiff failed to establish the elements of her defamation claim, as there was no evidence Kline acted with actual malice or reckless disregard for the truth. Additionally, although they acknowledge the judge did not rule on the issue, defendants maintain they are immune from liability under N.J.S.A. 9:6-8.13 and the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3 (TCA). We address the parties' arguments in turn.

## II.

We review a trial court's grant of summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-

2(c). A court should grant summary judgment when "the evidence 'is so one-sided that [the moving] party must prevail as a matter of law.'" Rios v. Media Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 257 (2018)).

The key inquiry is whether the evidence presented, when viewed in the light most favorable to the non-moving party, is "sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 305 (2023) (quoting Samolyk, 251 N.J. at 78). In deciding "whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alterations in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). When deciding a summary judgment motion, courts may not weigh evidence or resolve credibility disputes. See Rios, 247 N.J. at 13 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)) ("The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'").

We review a trial court's decision on a motion for reconsideration for abuse of discretion. In re Est. of Jones, 477 N.J. Super 203, 216 (App. Div.

2023). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (internal quotation marks omitted)). A motion for reconsideration should be granted solely in "those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative competent evidence." Castano v. Augustine, 475 N.J. Super. 71, 78 (App. Div. 2023) (alterations in original) (quoting Triffin v. SHS Grp., LLC, 466 N.J. Super. 460, 466 (App. Div. 2021)).

### III.

Based on prevailing law applied to the undisputed facts, we are unconvinced the judge erred in granting summary judgment to defendants and dismissing plaintiff's complaint.

To prove defamation, "a plaintiff must establish, in addition to damages, that the defendant (1) made a defamatory statement of fact (2) concerning the plaintiff (3) which was false, and (4) which was communicated to a person or

11

persons other than the plaintiff." Feggans v. Billington, 291 N.J. Super. 382, 390-91 (App. Div. 1996). "[A] statement is defamatory if it is false, communicated to a third person, and tends to lower the subject's reputation in the estimation of the community or to deter third persons from association with [the subject]." Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 164-65 (1999). A plaintiff must also prove fault, Feggans, 291 N.J. Super. at 391, whether negligence or actual malice.

"There must be a showing of actual malice by a defendant where the statement is about a plaintiff who is a public figure or relates to an issue of public concern." Herman v. Muhammad, 480 N.J. Super. 480, 492 (App. Div. 2024) ("The actual malice standard applies here because [plaintiff's] conduct arose in the context of her teaching in a public school."); see also Rocci v. Ecole Secondaire Macdonald-Cartier, 165 N.J. 149, 156 (2000). The actual-malice standard is subjective. Thus "[t]o find actual malice, the factfinder must determine that the defendant in fact entertained serious doubts about the truth of the statement or that defendant had a subjective awareness of . . . [its] probable falsity." Costello v. Ocean Cnty. Observer, 136 N.J. 594, 615 (1994). Although questions of intent are generally fact-sensitive, summary judgment is appropriate in a defamation case where the plaintiff is a public figure and fails

to "demonstrate that a reasonable jury could conclude that 'clear and convincing evidence' exists that the defendants" acted with actual malice. Id. at 614 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254-55 (1986)).

Even accepting plaintiff's version of events—that Kline suggested plaintiff's name to the DCPP investigator without offering documentation—we discern no error in the judge's conclusion Kline's conduct did not, as a matter of law, constitute actionable defamation. We agree Kline's response to the DCPP investigator's inquiry was not defamatory because the undisputed facts establish it was true. The record does not establish the information Kline provided was inaccurate and non-responsive to the DCPP investigator's description of a twenty-five-year-old female substitute named "Mrs. Meads." The record also demonstrates plaintiff was in fact the person to whom K.C.'s mother was referring when she reported the alleged relationship to the police.

We are also unpersuaded the judge improperly made a determination as to Kline's state of mind on summary judgment. Although questions of intent are generally fact-sensitive, summary judgment is appropriate here because plaintiff, as a public school substitute-teacher, is a public figure and failed "to demonstrate that a reasonable jury could conclude . . . 'clear and convincing evidence' exists" that Kline acted with actual malice. Costello, 136 N.J. at 614.

A-2885-24

(quoting Anderson, 477 U.S. at 354-55). Rather than impermissibly resolving issues of intent, the judge made a legal determination as to the sufficiency of evidence supporting the conclusion Kline acted with actual malice. Ibid. The judge did not err given the record contains no objective evidence of falsity or evidence Kline subjectively entertained doubts as to the information he provided to DCPP. The judge's conclusion was grounded in undisputed facts—the DCPP investigator provided Kline with limited information, and Kline referenced a substitute teacher who matched the investigator's description.

IV.

We are unconvinced the judge erred by dismissing all claims without separately analyzing each cause of action. Trial courts may dispose of all claims "[g]rounded . . . in the same conduct alleged in the defamation counts," Fortenbaugh v. N.J. Press, Inc., 317 N.J. Super. 439, 457 (App. Div. 1999), "if the alleged defamation is not actionable," LoBiondo v. Schwartz, 323 N.J. Super. 391, 417 (App. Div. 1999). In other words, "a plaintiff . . . may not circumvent the required elements of or defenses applicable to another cause of action that directly governs a particular form of conduct"—here, defamation— "by relying upon them as a basis for" other claims. Griffin v. Tops Appliance City, Inc., 337 N.J. Super. 15, 24 (App. Div. 2001).

14

Here, the judge reasonably concluded all of plaintiff's claims arose from the same core conduct, Kline's reference to plaintiff during DCPP's investigation. To the extent plaintiff argues the "accusation against her was wrongfully shared with others in the school," those allegations are inextricably intertwined with her defamation claim. Having determined Kline's conduct was non-defamatory, the judge properly concluded all of plaintiff's claims were barred as a matter of law. See Salek v. Passaic Collegiate Sch., 255 N.J. Super. 355, 361 (App. Div. 1992) ("To hold otherwise would permit plaintiff to . . . circumvent defenses to the defamation action."). Moreover, there is no evidence in the record that the DCPP investigation was revealed to any staff member. Therefore, we are unconvinced by plaintiff's arguments on this issue.

V.

Finally, plaintiff asserts the court improperly disregarded the "law of the case" doctrine when it revisited the applicability of immunity defenses after an earlier denial of defendants' motion to dismiss on the same issue. The law of the case doctrine "is a discretionary rule that calls on one court 'to balance the value of judicial deference for the rulings of a coordinate [court] against those factors that bear on the pursuit of justice and, particularly, the search for truth.'" State v. K.P.S., 221 N.J. 266, 276 (2015) (alteration in original) (quoting

15

Lombardi v. Masso, 207 N.J. 517, 538-39 (2011)) (internal quotation marks omitted). "[T]he law of the case doctrine 'is only triggered when one court is faced with a ruling on the merits by a different and co-equal court on an identical issue.'" Lawson v. Dewar, 468 N.J. Super. 128, 135 (App. Div. 2021) (emphasis omitted) (quoting Lombardi, 207 N.J. at 539).

The record reflects, however, the judge did not specifically address defendants' arguments on the immunity defenses in his March 11, 2025 summary judgment ruling. Therefore, because the issues are not identical and our determination on the remainder of plaintiff's arguments is dispositive, we reject plaintiff's argument that the judge's decision does not comport with the law of the case doctrine.

To the extent we have not otherwise addressed plaintiff's arguments, it is because they do not merit discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

A-2885-24